UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
MICHAEL A. MEDINA,

                    Plaintiff,

                                                      Civil Action No.: 15cv2551(KBF)

       *- against -*

DASH FILMS INC., DAMON DASH
PROMOTIONS LLC, DAMON DASH MUSIC
GROUP LLC, DAMON DASH ENTERPRISES
I LLC, DAMON DASH, and KANYE WEST,

                    Defendants.
-------------------------------------------------------------X

**MEMORANDUM OF LAW in OPPOSITION to Kanye West's MOTION TO DISMISS**

**The Bostany Law Firm PLLC**

**Attorneys for Plaintiff**
**40 Wall Street – 28th Floor**
**New York, New York 10005**
**(212) 530-4400**

**Table of Contents**

PRELIMINARY STATEMENT ............................................................................................ 1

FACTS ............................................................................................................................. 2

ARGUMENT ..................................................................................................................... 3

POINT I. USE OF A REGISTERED WORD MARK TO IDENTIFY DEFENDANTS'
GROUP AND TITLE OF VIDEOS-LOISAIDAS, IS NOT EXEMPT FROM THE
LANHAM ACT .................................................................................................................. 3

POINT II. EVEN IF THE COURT FINDS THAT THE DEFENDANTS SELECTION OF
LOISAIDAS AS A NAME FOR THEIR GROUP AND SUBSEQUENT USE OF THE
MARK TO IDENTIFY MUSIC VIDEOS IS ARTISTICALLY RELEVANT, THE
MOTION STILL MUST BE DENIED AT THIS JUNCTURE ......................................... 7

POINT III. THE DEFENDANTS' LOISAIDAS IS CLEARLY NOT "FAIR USE". ........ 11

POINT IV. THE AMENDED COMPLAINT STATES A CLAIM UNDER RULE 8 ...... 12

POINT V. THE SECOND AMENDED COMPLAINT SHOULD BE PERMITTED ..... 15

CONCLUSION ............................................................................................................... 17

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*
556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) ............................................ 12, 13

*Bell Atl. Corp. v. Twombly*
550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) …………………………………12

*Lambertini v. Fain*
2014 WL 4659266, at *2 (E.D.N.Y. 2014) …………………………………………………...13

*Capitol Records, Inc. v. Wings Digital Corp.*
218 F.Supp.2d 280, 284 (E.D.N.Y.2002) …………………………………...……………13

*C & L Int'l Trading Inc. v. Am. Tibetan Health Inst., Inc.*
2013 WL 6086907, at *4 (S.D.N.Y. 2013 …………………………………………………...14

*Central Hudson Gas & Electric Co. v. Public Service Comm'n*
447 U.S. 557, 566, 100 S.Ct. 2343, 2351, 65 L.Ed.2d 341 (1980) .……………………..…………5

*Cummings v. Soul Train Holdings LLC*
67 F. Supp. 3d 599, 606 (S.D.N.Y. 2014) ……………………………………….……..………..5

*Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd*
604 F.2d 200, 205 (2d Cir.1979)……………….…………………………………………….9

*DeClemente v. Columbia Pictures Indus., Inc.*
860 F. Supp. 30, 46 (E.D.N.Y. 1994) ……………………………..……………………….……..6

*Dillinger, LLC v. Elec. Arts Inc.*
2011 WL 2457678, at *4 (S.D. Ind. 2011) 868 F. Supp. 2d 172, 180-81 (S.D.N.Y. 2012) …...…….......…9

*Ellis v. Jean*
2011 WL 6368555, at *2 (S.D.N.Y. 2011)(McKenna, D.J.)……………………………………..12

*Kelly-Brown v. Winfrey*
717 F.3d 295, 305 (2d Cir. 2013) ……………………………………….…….…………………11

*Lemme v. National Broadcasting Company*
472 F. Supp. 2d 433, 446 (E.D.N.Y. 2007 ………………………….………..……..6, 7

*Lucente v. Int'l Bus. Mach. Corp.*
310 F.3d 243, 258 (2d Cir.2002) ……………………………………………..…..17

*Merck & Co. v. Mediplan Health Consulting, Inc.*
425 F. Supp. 2d 402, 412 (S.D.N.Y. 2006) …………………………………………..11

*Morningside Grp. Ltd. v. Morningside Capital Grp., L.L.C*
182 F.3d 133, 139 (2d Cir. 1999) ……………………………………………………1

*M. Shanken Commc'ns, Inc. v. Cigar500.com*
No. 07 CIV. 7371 (JGK), 2008 WL 2696168, at *11 (S.D.N.Y. 2008) ………………………11

*Naked Cowboy v. CBS*
844 F. Supp.2d 510, 514 (S.D.N.Y. 2012) ……………..……………………………...11, 12

*New York State Psychiatric Ass'n, Inc. v. UnitedHealth Grp.*
2015 WL 4940352, at *3 ____F.3d ____ (2d Cir. Aug. 20, 2015) ………………………………..13

*Polaroid Corp. v. Polarad Elecs. Corp.*
287 F.2d 492, 495 (2d Cir.1961) …………………………………….....……………………...…6, 7

*Ritani, LLC v. Aghjayan*
880 F. Supp. 2d 425, 448 (S.D.N.Y. 2012) ……...…………………………………………...11

*Rogers v. Grimaldi*
875 F.2d 994, 999 (2d Cir.1989) …………… ……………………………………………4, 7, 9

*Sidney Frank Importing Co. v. Beam Inc.*
998 F. Supp. 2d 193, 213 (S.D.N.Y. 2014) ……………………………………………13, 14

*Simon & Schuster, Inc. v. Dove Audio, Inc*
 970 F. Supp. 279, 296 (S.D.N.Y. 1997) ……………………………..………………..……..…5

*Tri-Star Pictures, Inc. v. Leisure Time Prods., B.V.*
749 F. Supp. 1243, 1253 (S.D.N.Y. 1990) *aff'd,* 17 F.3d 38 (2d Cir. 1994)……………….... ……4

*Twin Peaks Prods., Inc. v. Publications Int'l, Ltd*
 996 F.2d 1366, 1379 (2d Cir. 1993) ……………………………………………………...…7

*Vantone Grp. Liab. Co. v. Yangpu NGT Indus. Co.*
 2015 WL 4040882, at *5 (S.D.N.Y. 2015) ……………………………………………..…14

*Vidal Sassoon, Inc. v. Bristol-Myers  Co.*
661 F.2d 272, 276 (2d Cir. 1981) …………………………………..…………..……….…5

*Vuitton Malletier S.A. v. Warner Bros. Entm't Inc*
868 F. Supp. 2d 172, 180-81 (S.D.N.Y. 2012) ………………………………..…......…9, 10

*Wall St. Sys. Sweden AB v. Hertz Global Holdings, Inc.*
2015 WL 158887, at *2 (S.D.N.Y. 2015) …………………………………………………..13

*Westchester Media v. PRL USA Holdings, Inc*
 214 F.3d 658, 664-65 (5th Cir. 2000) …..……………………………..……………..10

*Woodard v. Jackson*
2004 WL 771244, at *7-8 (S.D. Ind. 2004) …………………………….....................…8

**Statutes**

15 U.S.C. §1127…………………………………………………………….………………………..7

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
MICHAEL A. MEDINA,

                Plaintiff,

                                           Civil Action No.: 15cv2551(KBF)

      *- against -*

DASH FILMS INC., DAMON DASH
PROMOTIONS  LLC, DAMON DASH MUSIC
GROUP LLC, DAMON DASH ENTERPRISES
I LLC, DAMON DASH, and KANYE WEST,

                Defendants.
-----------------------------------------------------------------X


## MEMORANDUM OF LAW in OPPOSITION


### PRELIMINARY STATEMENT

      Following the filing of this action in April of 2015, Defendants remarked in the media that they believed they would prevail.  They did not, however, enter appearances though they must have been aware, from filings on the Docket, that Plaintiff was attempting to serve them for months.  Defendants answered the Amended Complaint and requested a stay of discovery, which was denied from the bench on July 30, 2015 an issue that would be revisited following the Defendants' August 7, 2015 filing of its motion to dismiss to be followed by a letter brief from Plaintiff on the Stay application. See Order dated July 30, 2015.  In an Order dated August 17, 2015, this Court granted the Stay subject to re-visitation after the filing of the Plaintiff's Opposition to the Motion.

On this motion, Defendant Kanye West submitted a memory key which contained all 11 clips (approximately 5 mins each) of the Defendants' LOISAIDAS.

## FACTS

Defendants used the exact same spelling as Plaintiff's word mark LOISAIDAS to identify a group of rappers/thugs and a series music videos featuring them. A review of the memory key submitted by Defendants on August 7, reveals that each of the music videos (which the parties were formally calling a "film") are in fact approximately 5-minute clips of street life mixed with gangsta rap, many times with the participants in the video doing the rapping. *See* Declaration of Kyra Wagstaff dated August 28, 2015. Indeed, even when it is not visible to the audience that the participants are rapping, we are left with the impression that the rapping heard on the musical clips, is being sung by the participants in the clip, i.e. there is no credit to any other musical source. *Id.*

Defendants spent significant time arguing that the word LOISAIDA existed before plaintiff's use of the word LOISAIDAS.[1] Defendants do not dispute that Plaintiff owns the registered trademark LOISAIDAS for the same product/services offered by Defendants under the same name. Defendants ask the Court to accept as true on this motion that there is confusion as to source, affiliation, sponsorship and association, that the Defendants' adopted and used the same mark as the Plaintiff, to identify the same types of goods and services and did so in bad faith.

---

[1] "Use of a like mark in a different market for different products or services need not undermine the mark's strength in its own market" *Morningside Grp. Ltd. v. Morningside Capital Grp., L.L.C.*, 182 F.3d 133, 139 (2d Cir. 1999).

They argue that despite blatant bad faith infringement, the case should be dismissed because the Plaintiff did not plead it correctly and/or that the Defendants should be allowed to adopt and use the LOISAIDAS word mark under First Amendment exceptions.  In making this motion under Rule 12, Defendants disregard the requirement set forth in <u>Twin Peaks</u>, which requires denial of the Rule 12 motion even if the Court finds there is artistic relevance to Defendants sophisticated, step by step process to circumvent the Lanham Act and acquire the Plaintiff's mark for their group and videos.

## <u>ARGUMENT</u>

### <u>POINT I</u>

**Use of a Registered Word Mark to identify Defendants' group and title of videos-<br>LOISAIDAS, is not exempt from the Lanham Act**

The subject music videos are not a parody of LOISAIDAS, nor is the title of the series of clips artistically relevant to any existing group that calls themselves LOISAIDAS, i.e. the videos are about the Defendants' new coined LOISAIDAS group, not the Plaintiff's LOISAIDAS.  Defendants do not deny that they selected the name Loisaidas for their group even though it was already registered in the United States Patent and Trademark Office for plaintiff's group.  Defendants then claim that they are permitted to entitle their series of clips LOISAIDAS because in fact they labeled their group by the same name.  This certainly is not the artistic relevance that our Second Circuit Court of Appeals has discussed in any of the controlling precedent on this issue.

Indeed, all of the cases involve either an author's use of a name in a parody or an author's use of a use of the name of a performer or person without their consent.

Here, the Defendants are referring to themselves, the group that they labeled LOISAIDAS. It is respectfully submitted that this kind of blatant theft of a trademark, has no artistic relevance and does not invoke the heightened application of the Polaroid factors that is required when there is some artistic relevance in a book or movie title. *Rogers v. Grimaldi* was a right of publicity case that did not involve a registered trademark. The Defendants were using the names of two well-known performers. The court held that "in the context of allegedly misleading titles using a celebrity's name, that balance will normally not support application of the Act unless the title has no artistic relevance to the underlying work whatsoever, or, if it has some artistic relevance, unless the title explicitly misleads as to the source or the content of the work[2]".

A review of footnote 5 illustrates that the *Rogers* court was not intending to allow the use of titles that are confusingly similar to trademarks. "This limiting construction would not apply to misleading titles that are confusingly similar to other titles. The public interest in sparing consumers, this type of confusion outweighs the slight public interest in permitting authors to use such titles". *Id.* (Emphasis Supplied). See *Tri-Star Pictures, Inc. v. Leisure Time Prods., B.V.*, 749 F. Supp. 1243, 1253 (S.D.N.Y. 1990) *aff'd,* 17 F.3d 38 (2d Cir. 1994) ("the footnote to the Court's holding in *Rogers* specifically states that it does not apply to claims, like Academy's, of confusingly similar titles").

_____

This continues to follow settled precedent on the issue. "Misleading commercial speech is beyond the protective reach of the First Amendment". *Vidal Sassoon, Inc. v. Bristol-Myers Co.*, 661 F.2d 272, 276 (2d Cir. 1981) *quoting Central Hudson Gas & Electric Co. v. Public Service Comm'n*, 447 U.S. 557, 566, 100 S.Ct. 2343, 2351, 65 L.Ed.2d 341 (1980). Judge Sand, utilized this same reasoning to grant summary judgment to a Plaintiff despite the Defendants' claim that it has artistic relevance. *Simon & Schuster, Inc. v. Dove Audio, Inc.*, 970 F. Supp. 279, 296 (S.D.N.Y. 1997).


Accordingly, Mr. West should not be permitted to utilize the title of the plaintiff's group LOISAIDAS to portray a group also called LOISAIDAS both in the content and title of the video. To the extent that the Court views this formula as meeting the artistically relevant test, the motion should be denied in any event to allow the parties to brief the issue of likelihood of confusion pursuant to the *Polaroid* factors following discovery.

Mr. West's citation to *Cummings* is misplaced. *Cummings* is a right of privacy case where the Plaintiff was pictured on DVD sets and promotional materials. The court did not entertain a registered trademark and did not apply the *Polaroid* factors. "The DVD sets here are artistic works, and the Complaint does not allege facts that could possibly show that consumers are likely to be confused about the source or ownership of those works because of the depiction of Plaintiff, among many other artists, in and on the DVD sets." *Cummings v. Soul Train Holdings LLC*, 67 F. Supp. 3d 599, 606 (S.D.N.Y. 2014).

*DeClemente* is a not controlling upon this court but is nevertheless entirely distinguishable. It involved an individual that registered the trademark "Karate Kid" years after the motion picture "The Karate Kid" was released by Columbia Pictures and on further round that Plaintiff's trademark was not protectable. "Having determined that, despite the registration of the plaintiff's service mark, the mark has not acquired a secondary meaning and therefore is not protectable under the trademark laws, it is not necessary for the Court to continue with an analysis of the second-prong of a claim for infringement; namely whether the defendants' allegedly infringing mark is likely to cause consumer confusion" *DeClemente v. Columbia Pictures Indus., Inc.*, 860 F. Supp. 30, 46 (E.D.N.Y. 1994).

Another case cited by the Defendants, *Lemme v. National Broadcasting Company,* since there was no dispute at to artistic relevance, the Eastern District carefully studied the mark American Dream in the context of the *Polaroid* factors and relying in part upon NBC's good faith and an extensive trademark search conducted by NBC, held that there was no likelihood of confusion. *Lemme v. Nat'l Broad. Co.*, 472 F. Supp. 2d 433, 446 (E.D.N.Y. 2007).

Again, this case does not support the Defendant's argument that this case can be resolved before discovery and without application of the Polaroid factors.

"Here, neither party has suggested that "American Dreams" is of no relevance to Defendant's show. The question then is whether the title "explicitly misleads as to the source or content of the work." *Id.* This determination is made, in the first instance, by application of "the venerable *Polaroid* factors." *Id.* (referencing *Polaroid Corp. v. Polarad*

6

*Elecs. Corp.,* 287 F.2d 492, 495 (2d Cir.1961)). However, "the finding of likelihood of confusion must be particularly compelling to outweigh [Defendant's significant] First Amendment interest." *Id. Lemme v. Nat'l Broad. Co.*, *supra* (quoting *Rogers v. Grimaldi*, 875 F.2d 994, 999 (2d Cir.1989)).

## POINT II

### Even if the Court finds that the Defendants selection of LOISAIDAS as a name for their group and subsequent use of the mark to identify music videos is artistically relevant, the motion still must be denied at this juncture

In the event that this Court finds that Defendants were permitted to select the same mark as the Plaintiff and that there is some artistic relevance, "the question then is whether the title is misleading . . . This determination must be made, in the first instance, by application of the venerable *Polaroid* factors. However, the finding of likelihood of confusion must be particularly compelling to outweigh the First Amendment interest recognized in *Rogers." Twin Peaks Prods., Inc. v. Publications Int'l, Ltd.*, 996 F.2d 1366, 1379 (2d Cir. 1993)(citations omitted)(emphasis supplied). Accordingly the motion would be denied in any event since it does not involve analysis of the *Polaroid* factors pursuant to a standard that would permit resolution on the merits.

The Defendants have argued that the matter can be resolved by accepting the plaintiff's pleadings as true, which if taken as true set forth blatant trademark infringement, actual confusion and bad faith.

At the same time, Defendants at times seek to have the Court reject certain of the allegations without allowing an opportunity for discovery by making self-serving factual statements, that discovery will prove untrue. For example, Defendants argue that their use of the term LOISAIDAS is in conjunction with the word DAMON DASH

STUDIOS and "couples the title with a handgun".   Discovery will show that Defendants utilized the mark LOISAIDAS many times by itself and many times in the same or similar font as is utilized by the plaintiff.  While there are occasions where the Defendants use the mark with stylized font, coupling the title with a handgun, and adjacent to the name "Damon Dash Studios", but these uses are certainly not the only way Defendants use the mark.

Further, Defendants have not cited any controlling authority that permits the court to grant a motion pursuant to Rule 12(c) without an analysis of the likelihood of confusion between the marks pursuant to the *Polaroid* factors.  Defendants cite lower court cases that follow different standards.  For example, in a Central District of California case, the court allowed Defendants to use the plaintiff's trademark "Route 66" as the title of a pornographic film.  But this case is not analogous at all.  It would be if the plaintiffs there for example had a musical group known as the "66er's" and trademarked the name and then the Defendants started their own musical group called the 66er's which they released by way of a series of music videos all called the 66er's.

In *Woodard v. Jackson,* the Southern District of Indiana held that the defendant's use of the plaintiffs purported mark "Ripples and Waves" in the liner notes of a sealed CD package "could not have an effect on the purchasing decision of a consumer … plaintiffs suggest that some customers might have read the liner notes before buying the CD, either by seeing a friend's copy or an opened store copy.  This theory is merely desperate speculation and is inconsistent with the Ninth Circuit's decision in *Rice* where such exposure to a friend's copy was also possible".  *Woodard v. Jackson*, 2004 WL 771244, at *7-8 (S.D. Ind. 2004) It is also worthwhile noting that in *Woodard v. Jackson,*

the plaintiff's "abandoned any rights they may have had in the name ripples and waves".
*Id* citing 15 U.S.C. §1127.


In *Dillinger,* another Southern District of Indiana Court cited by Mr. West, the
Court held that the use of Dillinger in video games, which utilized in some respects
Tommy Guns can have some artistic relevance.   *Dillinger, LLC v. Elec. Arts Inc.,* 2011
WL 2457678, at *4 (S.D. Ind. 2011). First, this case has little value as it is a decision on
a motion for summary judgment and not a Rule 12(c) motion.  *Id.* Further, its facts are
far different. It would be analogous if the plaintiff had formed a group called "The
Dillingers" and trademarked the name prior to the Defendants also forming a group
called "The Dillingers" and entitling a series of musical/video clips "The Dillingers". But
that is clearly not with this Indiana case held.  The Court would not have allowed such
use as it is like the use of LOISAIDAS here, "simply a disguised commercial
advertisement for the sale of goods or services." *Id.*  quoting *Rogers,* 875 F.2d at 999,
1004 (2d Cir.1989).

Mr. West cites *Louis Vuitton Malletier S.A. v. Warner Bros. Entm't Inc,* but there
Judge Carter explained that case *did not involve "*confusion that the mark's owner
sponsored or approved of the film, for this was the  precise type of confusion the court
found actionable" in *Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.,* 604
F.2d 200, 205 (2d Cir.1979).  *Louis Vuitton Malletier S.A. v. Warner Bros. Entm't Inc.,*
868 F. Supp. 2d 172, 180-81 (S.D.N.Y. 2012).  Judge Carter cited the inapplicability of
*Dallas Cowboys Cheerleaders* to noncommercial speech and held that Plaintiff, Louis
Vuitton, failed to recognize that the Second Circuit now uses the "particularly

compelling" standard set forth in Twin Peaks when a title of a film is found to be artistically relevant.  *Louis Vuitton Malletier S.A. v. Warner Bros. Entm't Inc.*, *supra*, citing *Westchester Media v. PRL USA Holdings, Inc.*, 214 F.3d 658, 664-65 (5th Cir. 2000).


To determine whether an artistically relevant title misleads as to the source or content of the work, the Second Circuit applies the likelihood of confusion test used in evaluating standard trademark infringement claims. However, the likelihood of confusion must be "particularly compelling" to outweigh the First Amendment interests at stake". *Westchester Media v. PRL USA Holdings, Inc.*, 214 F.3d 658, 664-65 (5th Cir. 2000) *quoting Twin Peaks Productions,* supra at 1379.

Mr. West has not cited a single case that holds that a music video clip is subject to the particularly compelling standard.  And even if this Court holds that it is, the circumstances here where the Defendants select the same name for their group as the Plaintiff's group and then caption the music video by the same name, does not have any of the artistically relevant characteristics that we have seen in any case since Rogers. Finally, even if the Court finds that a music video is subject to Rogers and finds that the Defendants conduct does ignite artistic relevance, this Rule 12 motion must be denied to afford the parties an opportunity to brief likelihood of confusion pursuant to the *Polaroid* factors following discovery on the issues.

<u>Point III</u>

<u>The Defendants' LOISAIDAS is clearly not "Fair Use"</u>

"[B]ecause fair use is an affirmative defense, it often requires consideration of facts outside of the complaint and thus is inappropriate to resolve on a motion to dismiss." *Kelly-Brown v. Winfrey*, 717 F.3d 295, 305 (2d Cir. 2013). See also *Merck & Co. v. Mediplan Health Consulting, Inc.*, 425 F. Supp. 2d 402, 412 (S.D.N.Y. 2006) (Fair use fails on a motion to dismiss, as the only question at that stage is the sufficiency of the pleadings, and Plaintiff should be given chance to prove consumer confusion); *M. Shanken Commc'ns, Inc. v. Cigar500.com*, No. 07 CIV. 7371 (JGK), 2008 WL 2696168, at *11 (S.D.N.Y. 2008) (Refusing to decide the issue of fair use on a motion to dismiss because the court could not conclude as a matter of law that the contested use was descriptive and that consumers would not be confused).

In rebutting any arguments, the plaintiff must only plead "sufficient facts to plausibly suggest that they are entitled to relief." *Id.* See also *Ritani, LLC v. Aghjayan*, 880 F. Supp. 2d 425, 448 (S.D.N.Y. 2012) (Denying motion to dismiss after rejecting a finding of fair use and finding that Plaintiff alleged sufficient facts in Complaint to adequately plead claims against Defendant).

In the *Naked Cowboy* case, the use of "Naked Cowboy" at issue was the title of a brief online video clip of a soap opera episode in which a character played guitar and sang for several seconds while wearing only his briefs, cowboy boots, and cowboy hat. *Naked Cowboy v. CBS*, 844 F. Supp.2d 510, 514 (S.D.N.Y. 2012). The use of the mark at issue in that case was literally descriptive of what was contained in a short video clip;

11

it was not the title of the entire soap opera series. Indeed, the words "Naked Cowboy" "did not appear anywhere during the Episode, nor were they spoken by any of the characters." *Id.* at 513. Further, the Complaint "contained no allegations of actual confusion … no facts suggesting that Defendants acted in bad faith. And, despite numerous references to the high quality of Plaintiff's brand, the Complaint alleges no facts that suggest that Defendants' product is of low quality." *Naked Cowboy v. CBS*, 844 F. Supp. 2d 510, 517 (S.D.N.Y. 2012).

By contrast, the instant amended complaint and proposed second amended complaint, shows that the mark is arbitrary, that Defendants' adopted and used it in bad faith, that there both actual and a likelihood of confusion and that Defendants' product actually poisons the word mark by associating it with a gangsta rap group that embraces a culture of crime, corruption and violence.

## Point IV

### The Amended Complaint states a Claim under Rule 8

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). In turn, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows' the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

*Ellis v. Jean*, 2011 WL 6368555, at *2 (S.D.N.Y. 2011)(McKenna, D.J.).

"As the Supreme Court held in *Twombly,* Federal Rule of Civil Procedure 8(a)(2) "requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Twombly,* 550 U.S. at 555 (internal quotation marks and citations omitted, ellipses in original). Based upon the allegations contained in Plaintiffs' complaint, Defendants here cannot be said to lack fair notice of Plaintiffs' claims and the grounds upon which they rest." *Id. at *4.*

 "A complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). *New York State Psychiatric Ass'n, Inc. v. UnitedHealth Grp.,* 2015 WL 4940352, at *3 ____F.3d ____ (2d Cir. Aug. 20, 2015) ("facts sufficient to state a plausible claim for relief" will survive a Rule 12 motion).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Wall St. Sys. Sweden AB v. Hertz Global Holdings, Inc.,* 2015 WL 158887, at *2 (S.D.N.Y. 2015)(quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 556 (2007)).

"Since the complaint 'need only give the opposing party fair notice of what the plaintiff's claim is and the grounds on which it rests,' a plaintiff is not required 'to plead specific evidence or extra facts beyond what is needed to make the claim plausible.'" *Lambertini v. Fain*, 2014 WL 4659266, at *2 (E.D.N.Y. 2014) (quoting *Capitol Records, Inc. v. Wings Digital Corp.,* 218 F.Supp.2d 280, 284 (E.D.N.Y.2002).  See also, *Sidney*

*Frank Importing Co. v. Beam Inc.*, 998 F. Supp. 2d 193, 213 (S.D.N.Y. 2014)(Plaintiff's description of "specific instances of conduct" is sufficient).

In a trademark case with similar allegations Judge Stanton held:

> As discussed above, plaintiffs sufficiently plead that their marks are valid and protectable under the Lanham Act. The amended complaint also alleges that:
>
> 54. The Defendants, without authorization or license from the Plaintiffs, have willfully and intentionally used, reproduced, and/or copied the Plaintiff's Marks in connection with their manufacturing, distributing, exporting, importing, advertising, marketing, selling and/or offering to sell their Counterfeit Products.
> ....
> 74. The Defendants's actions have caused and are likely to cause confusion and mistake and to deceive potential consumers and the general purchasing public as to the source, origin or sponsorship of their Counterfeit Products, and are likely to deceive the public into believing that the Counterfeit Products sold by the Defendants originate from, are associated with, or are otherwise authorized by the Plaintiffs, all to the damage and detriment of Plaintiffs's reputation, goodwill and sales.
> Those allegations sufficiently plead that Defendants used plaintiffs' marks in a manner likely to cause confusion among consumers, and thus the amended complaint adequately states claims under sections 32 and 43(a) of the Lanham Act.

*C & L Int'l Trading Inc. v. Am. Tibetan Health Inst., Inc.*, 2013 WL 6086907, at *4 (S.D.N.Y. 2013).  *See also*, *Vantone Grp. Liab. Co. v. Yangpu NGT Indus. Co.*, 2015 WL 4040882, at *5 (S.D.N.Y. 2015)("By alleging that Beijing Vantone has used a mark identical to the registered marks that Plaintiff owns in connection with the services it offers, Plaintiff has successfully pleaded facts that demonstrate the potential for consumer confusion").

Examples of allegations in the Plaintiff's first Amended Complaint that are similar to these allegations are:

> 50. Long after the adoption and use by Plaintiff of the LOISAIDAS Trademark, and with at least constructive notice of the Plaintiff's Trademark, Defendants knowingly and intentionally used an identical and slightly identical version of Plaintiff's registered mark to manufacture, sell and distribute their film.

51. Upon information and belief, Defendants have offered for sale products using the same name, LOISAIDAS, after the mark was registered to the Plaintiff.

52. Defendants, by their acts as aforesaid, have taken advantage of the creative skill of Plaintiff.

53. Defendants have advertised, promoted, marketed and/or sold their products under the name LOISAIDAS.

54. Defendants injected their products into commerce with the express intent of profiting from Plaintiff's valuable registered trademark.

66. The Defendants' use of Plaintiff's word mark results in confusion as to sponsorship, association, source and origin of the Plaintiff's and Defendants' products.

70. As a result of Defendants' conduct, the public has already believed and is likely to continue to believe that Plaintiff's goods and services are in some way associated with, affiliated with and/or originating from the publishers and/or sponsors of the LOISAIDAS film sold and/or promoted by Defendants.

71. Upon information and belief, Defendants have willfully infringed upon the LOISAIDAS trademarks.

72. The Defendants' acts constitute false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which is likely to cause confusion, or to cause mistake, or to deceive as to affiliation, connection, or association of Defendants with Plaintiff, or as to the origin, sponsorship, or affiliation of Plaintiff's LOISAIDAS goods and services with Defendants.

*See* Plaintiff Michael Medina's Amended Complaint dated May 12, 2015.

## Point V

## The Second Amended Complaint Should be Permitted

A review of the entire series of clips provided by the Defendants in early August 2015, provides a more accurate depiction of the defendant's works which are embodied in the proposed second amended complaint. The second amended complaint also contains additional allegations which further specify the Defendants' misconduct. The first amended complaint explains that the plaintiff owns a registered trademark for the same name utilized by the Defendants, LOISAIDAS. It explains that the mark is registered and used in categories including musical sound recordings, downloadable

video recordings featuring musical performances by LOISAIDAS which is almost precisely what the Defendants are selling.

The pleading goes on to show how the Defendants are offering for sale and selling goods and services under the same name and that there is actual confusion and a likelihood of confusion.  The first amended pleading shows that the Defendants did not conduct a trademark search, did not even search the USPTO website before using the LOISAIDAS mark, did not search the internet and used the mark to identify the LOISAIDAS group and the title of the clips featuring the LOISAIDAS group willfully, deliberately, and in bad faith.

As a result, the first amended pleading not only complains that the Defendants have caused confusion as to affiliation, association, origin, and source, but have also falsely mislead and deceived the public as to the origin, sponsorship, connection, association, or affiliation of the plaintiff's goods and services.  The first amended complaint also implicates consumer protection concerns under laws of this state because the deceptive practices have caused injury to consumers.

The Second Amended Complaint bolsters these allegations with additional factual statements, which assist the reader in connecting the Defendants' acts with the wrongs complained of.  As previously mentioned, the second amended complaint also corrects some misstatements concerning the Defendants' works and series of clips, which were originally based upon incomplete information, now supplemented by the defendant's production of the entire series.  Discovery has not started and we are at the initial pleading stage.  Just two weeks ago, Defendants filed an amended answer to the first amended complaint.

The Second Amended Complaint is not futile as it survives the Rule 12 attack for the reasons set forth *infra*. "[A]t bottom, the 12(b)(6) standard and the Rule 15 futility standard are essentially the same". *In re Aluminum Warehousing Antitrust Litig.*, 2015 WL 1378946, at *28 *motion to certify appeal denied,* 2015 WL 4646822 (S.D.N.Y. 2015) (Forrest, D.J.) *citing Lucente v. Int'l Bus. Mach. Corp.,* 310 F.3d 243, 258 (2d Cir.2002).

This case is in its infancy. Although they were aware of this action since April 2015 (and were likely preparing for this motion for months) Defendants only reared their heads in late July, several days before informing the court and counsel that they planned to file this motion on August 7.

## CONCLUSION

Accordingly, it is respectfully requested that the plaintiff be permitted to amend his complaint and that the Defendants' motion to dismiss pursuant to Rule 12(c) be denied.

Dated: New York, New York
        August 28, 2015

                                                Respectfully submitted,
                                                THE BOSTANY LAW FIRM, PLLC

                                                /s/ John P. Bostany
                                                By:    John P. Bostany
                                                Attorneys for Plaintiff
                                                40 Wall Street, 28th Floor
                                                New York, New York 10005
                                                (212) 530-4400