UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
MICHAEL A. MEDINA,

                      Plaintiff,

                                                                     Civil Action No.: 15cv2551(KBF)

       *- against -*

DASH FILMS INC., DAMON DASH
PROMOTIONS LLC, DAMON DASH MUSIC
GROUP LLC, DAMON DASH ENTERPRISES
I LLC, DAMON DASH, and KANYE WEST,

                      Defendants.
----------------------------------------------------------------X

## MEMORANDUM OF LAW in OPPOSITION to Kanye West's Rule 12(b)(6) MOTION TO DISMISS

**The Bostany Law Firm PLLC**

**Attorneys for Plaintiff
40 Wall Street – 28th Floor
New York, New York 10005
(212) 530-4400**

**Table of Contents**

PRELIMINARY STATEMENT................................................................................ 1

FACTS ................................................................................................................. 2

ARGUMENT ......................................................................................................... 4

POINT I. THE SECOND AMENDED COMPLAINT PLEADS THE CLAIMS
SUFFICIENTLY ................................................................................................... 4

POINT II. MR. WEST SHOULD NOT BENEFIT BY THE "PARTICULARLY
COMPELLING" STANDARD................................................................................. 6

POINT III. EVEN IF THE COURT FINDS THAT THE DEFENDANTS SELECTION
OF LOISAIDAS AS A NAME FOR THEIR GROUP SUBSEQUENT USE OF THE
MARK TO IDENTIFY MUSIC VIDEOS IS ARTISTICALLY RELEVANT, THE
12(b)(6) MOTION SHOULD BE DENIED.. .................................................... 10

POINT IV. THE DEFENDANTS' LOISAIDAS IS CLEARLY NOT "FAIR USE" ........ 15

CONCLUSION...................................................................................................... 18

## TABLE OF AUTHORITIES

**Cases**

*Arrow Prods., LTD. v. Weinstein Co. LLC*
44 F. Supp 3d 359, 368 (S.D.N.Y. 2014) …………..……………………..……………..……… 16

*Ashcroft v. Iqbal*
556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) ..................................................... 4

*Bell Atl. Corp. v. Twombly*
550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) …………………………………..…4

*Capitol Records, Inc. v. Wings Digital Corp.*
218 F.Supp.2d 280, 284 (E.D.N.Y. 2002) ……………………………..……….……..………5

*C & L Int'l Trading Inc. v. Am. Tibetan Health Inst., Inc.*
2013 WL 6086907, at *4 (S.D.N.Y. 2013 ………………………………………………….....5

*Central Hudson Gas & Electric Co. v. Public Service Comm'n*
447 U.S. 557, 566, 100 S.Ct. 2343, 2351, 65 L.Ed.2d 341 (1980) ..……..……………..…………8

*Cummings v. Soul Train Holdings LLC*
67 F. Supp. 3d 599, 606 (S.D.N.Y. 2014) …………………………………….……..………..9

*Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd*
604 F.2d 200, 205 (2d Cir.1979)…………..………………………………………………..……14

*DeClemente v. Columbia Pictures Indus., Inc.*
860 F. Supp. 30, 46 (E.D.N.Y. 1994) …………………………..………………………..……..9

*Dillinger, LLC v. Elec. Arts Inc.*
2011 WL 2457678, at *4 (S.D. Ind. 2011) 868 F. Supp. 2d 172, 180-81 (S.D.N.Y. 2012) …..…….......…13

*Ellis v. Jean*
2011 WL 6368555, at *2 (S.D.N.Y. 2011)(McKenna, D.J.)…………………………..…….…4

*Guthrie Healthcare Sys. v. ContextMedia, Inc.*
28 F. Supp. 3d 193, 206 (S.D.N.Y. 2014) (Forrest, D.J.)……………………………..…..9

*Kelly-Brown v. Winfrey*
717 F.3d 295, 305 (2d Cir. 2013) ……………………………….…………….……………15

*Lemme v. National Broadcasting Company*
472 F. Supp. 2d 433, 446 (E.D.N.Y. 2007) ……………………………….………….……9, 10

*Louis Vuitton Malletier S.A. v. Warner Bros. Entm't Inc.*
868 F. Supp. 2d 172, 180-81 (S.D.N.Y. 2012) …………………………………………........14

*M. Shanken Commc'ns, Inc. v. Cigar500.com*
No. 07 CIV. 7371 (JGK), 2008 WL 2696168, at *11 (S.D.N.Y. 2008) …………………...……15

*Mattel, Inc. v. MCA Records, Inc.*
296 F.3d 894, 902 (9th Cir. 2002)……………………………………………………………...7

*Merck & Co. v. Mediplan Health Consulting, Inc.*
425 F. Supp. 2d 402, 412 (S.D.N.Y. 2006) ……………………………………………..15

*Morningside Grp. Ltd. v. Morningside Capital Grp., L.L.C*
182 F.3d 133, 139 (2d Cir. 1999) .............. …………………………………………………3

*Naked Cowboy v. CBS*
844 F. Supp.2d 510, 514 (S.D.N.Y. 2012) …………..…………………………..……...17

*New York State Psychiatric Ass'n, Inc. v. UnitedHealth Grp.*
2015 WL 4940352, at *3 ____F.3d ____ (2d Cir. Aug. 20, 2015) …………………..…………...4

*Polaroid Corp. v. Polarad Elecs. Corp.*
287 F.2d 492, 495 (2d Cir. 1961)……………………………….......………………………8, 10

*Ritani, LLC v. Aghjayan*
880 F. Supp. 2d 425, 448 (S.D.N.Y. 2012) ……..………………………………………10, 16

*Rosenthal v. Ritelite.*
986 F.Supp 133, 143 (E.D.N.Y. 1997)………………………………………...……………………..……....12

*Rogers v. Grimaldi*
875 F.2d 994, 999 (2d Cir. 1989) ..................... ……………………………………………7, 10

*Savin Corp. v. Savin Group*
391 F.3d 439, 458 (2d. Cir. 2004)
………………………………………………………………………………………...12

*Sidney Frank Importing Co. v. Beam Inc.*
998 F. Supp. 2d 193, 213 (S.D.N.Y. 2014) ………………………………………………..…5

*Simon & Schuster, Inc. v. Dove Audio, Inc*
970 F. Supp. 279, 296 (S.D.N.Y. 1997) ……………………………………….…….…..8

*Time, Inc. v. Petersen Pub. Co.*
173 F.3d 113, 117 (2d Cir. 1999)…………………………………………………………...……..8

*Toys R Us, Inc. v. Canarsie Kiddie Shop, Inc.*
559 F. Supp. 1189, 1197, E.D.N.Y. 1983) …………………………………………………...…12

*Tri-Star Pictures, Inc. v. Leisure Time Prods., B.V.*
749 F. Supp. 1243, 1253 (S.D.N.Y. 1990) *aff'd*, 17 F.3d 38 (2d Cir. 1994)…………………...7, 8

*Twin Peaks Prods., Inc. v. Publications Int'l, Ltd*
 996 F.2d 1366, 1379 (2d Cir. 1993) ………………………………………………………6, 11

*Vantone Grp. Liab. Co. v. Yangpu NGT Indus. Co.*
 2015 WL 4040882, at *5 (S.D.N.Y. 2015) …………………………………………………...….5

*Vidal Sassoon, Inc. v. Bristol-Myers Co.*
661 F.2d 272, 276 (2d Cir. 1981) …………………………………………..……………..……… 8

*Virgin Enterprises Ltd. v. Nawab*
335 F.3d 141, 149 (2d. Cir. 2003)
………………………………………………………………………………………..12

*Vuitton Malletier S.A. v. Warner Bros. Entm't Inc*
868 F. Supp. 2d 172, 180-81 (S.D.N.Y. 2012) ……………………………….…..….........13, 14

*Wall St. Sys. Sweden AB v. Hertz Global Holdings, Inc.*
2015 WL 158887, at *2 (S.D.N.Y. 2015) …………………………………………..……….…4

*Westchester Media v. PRL USA Holdings, Inc*
 214 F.3d 658, 664-65 (5th Cir. 2000) …...……………………………….…………………..14

*Woodard v. Jackson*
2004 WL 771244, at *7-8 (S.D. Ind. 2004) …………………………………...................12, 13

**Statutes**

15 U.S.C. §1127………………………………………………………….…………………13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MICHAEL A. MEDINA,

                Plaintiff,

       -*against*-

DASH FILMS INC., DAMON DASH
PROMOTIONS LLC, DAMON DASH MUSIC
GROUP LLC, DAMON DASH ENTERPRISES
I LLC, DAMON DASH, and KANYE WEST,

              Defendants.

Civil Action No: 15CV2551 (KBF)

## PRELIMINARY STATEMENT

On August 7, 2015, Kanye West filed a Motion to Dismiss pursuant to Fed.R.Civ.P. 12(c). Plaintiff opposed the motion to dismiss and simultaneously requested permission to file a Second Amended Complaint. By Order, dated September 14, 2015, this Honorable Court allowed the filing of the Second Amended Complaint and directed that discovery re-commence unless Defendants moved pursuant to Rule 12(b)(6) against the Second Amended Complaint.

On October 2, 2015, Mr. West filed a motion to dismiss seeking a determination, as a matter of law, that the title of Defendants' series of brief video clips be deemed a film and further, asking the Court to decide, as a matter of law, that the title of the clips had artistic relevance and invoked a heightened standard of proof in the case.

Counsel for Plaintiff mentioned at the July 30, 2015 conference, and again in the August 28, 2015 opposition brief, that even if Mr. West's argument had merit, the remedy would be that the Court ultimately scrutinize the Polaroid factors under a "particularly compelling" standard rather than dismiss the case. Nevertheless, Mr. West has re-filed his motion seeking dismissal of the Second Amended Complaint.

On this motion, Defendant Kanye West submitted the same memory key which contained all 8 clips (approximately 7 minutes each) of the Defendants' LOISAIDAS. *See* Wagstaff August 28, 2015 Declaration paragraph 2.

## FACTS

Defendants used the exact same spelling as Plaintiff's word mark LOISAIDAS to identify a group of rappers/thugs and a series music videos featuring them.  A review of the memory key submitted by Defendants on August 7 (and again in this motion on October 2) reveals that each of the music videos (which the parties were formally calling a "film") are in fact approximately 7-minute clips of street life mixed with gangsta rap, many times with the participants in the video doing the rapping. *See* Declaration of Kyra Wagstaff dated August 28, 2015.

Indeed, even when it is not visible to the audience that the participants are rapping, we are left with the impression that the rapping heard on the musical clips is being sung by the participants in the clip, i.e. there is no credit to any other musical source. *Id.*  Counsel for Mr. West argues in the new motion that only certain members are doing the rapping and that the rappers are not a group, and are more of a gang. Whether or not this is true is beside the point, as it is the theft of the mark by

Defendants, to both describe their gang/group and use that stolen mark on the title of the Clips, that is infringement.

In this motion, Mr. West again devotes substantial time to the argument that the word LOISAIDA existed before Plaintiff's use of the word LOISAIDAS, a point that is academic.[1]  Defendants do not dispute that Plaintiff owns the registered trademark LOISAIDAS for the same product/services offered by Defendants under the same name.   As pleaded, the Court accepts as true on this motion that there is confusion as to source, affiliation, sponsorship and association, that the Defendants' adopted and used the same mark as the Plaintiff to identify the same types of goods and services, and did so in bad faith.

Mr. West argues that despite blatant bad faith infringement, the case should be dismissed because the Plaintiff did not plead it correctly and/or that the Defendants should be allowed to adopt and use the LOISAIDAS word mark under First Amendment exceptions.

In making this motion under Rule 12, Defendants disregard the requirement set forth in Twin Peaks, which requires denial of the Rule 12 motion even if the Court finds there is artistic relevance to Defendants' sophisticated, step by step process to circumvent the Lanham Act and acquire the Plaintiff's mark for their group/gang and videos.   Accordingly, the motion can only determine, at this juncture, whether or not the heightened Rogers analysis will apply to the ultimate analysis of likelihood of confusion under the Polaroid factors.  The disposition of likelihood of confusion, it is respectfully submitted will be ripe at a later date, either by motion pursuant to Rule 56 or trial.

---

[1] "Use of a like mark in a different market for different products or services need not undermine the mark's strength in its own market" *Morningside Grp. Ltd. v. Morningside Capital Grp., L.L.C.*, 182 F.3d 133, 139 (2d Cir. 1999).

**ARGUMENT**

**Point I**

**The Second Amended Complaint Pleads the Claims Sufficiently**

"As the Supreme Court held in *Twombly,* Federal Rule of Civil Procedure 8(a)(2) "requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Twombly,* 550 U.S. at 555 (internal quotation marks and citations omitted, ellipses in original). Based upon the allegations contained in Plaintiffs' complaint, Defendants here cannot be said to lack fair notice of Plaintiffs' claims and the grounds upon which they rest." *Ellis v. Jean*, 2011 WL 6368555, at *4 (S.D.N.Y. 2011).

"A complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). *New York State Psychiatric Ass'n, Inc. v. UnitedHealth Grp.*, 2015 WL 4940352, at *3, 798 F.3d 125, 131 (2d Cir. Aug. 20, 2015) ("facts sufficient to state a plausible claim for relief" will survive a Rule 12 motion).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Wall St. Sys. Sweden AB v. Hertz Global Holdings, Inc.*, 2015 WL 158887, at *2 (S.D.N.Y. 2015)(quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 556 (2007)).

"Since the complaint 'need only give the opposing party fair notice of what the plaintiff's claim is and the grounds on which it rests,' a plaintiff is not required 'to plead

4

specific evidence or extra facts beyond what is needed to make the claim plausible.'"

*Lambertini v. Fain*, 2014 WL 4659266, at *2 (E.D.N.Y. 2014) (quoting *Capitol Records,*

*Inc. v. Wings Digital Corp.,* 218 F.Supp.2d 280, 284 (E.D.N.Y.2002).  See also, *Sidney*

*Frank Importing Co. v. Beam Inc.*, 998 F. Supp. 2d 193, 213 (S.D.N.Y. 2014)(Plaintiff's

description of  "specific instances of conduct" is sufficient).

"By alleging that Beijing Vantone has used a mark identical to the registered

marks that Plaintiff owns in connection with the services it offers, Plaintiff has

successfully pleaded facts that demonstrate the potential for consumer confusion".

*Vantone Grp. Liab. Co. v. Yangpu NGT Indus. Co.*, 2015 WL 4040882, at *5 (S.D.N.Y.

2015).

In another trademark case with far less allegations than asserted herein the

Second Amended Complaint Judge Stanton held:

> As discussed above, plaintiffs sufficiently plead that their marks are
> valid and protectable under the Lanham Act. The amended complaint
> also alleges that:
>
> 54. The Defendants, without authorization or license from the Plaintiffs,
> have willfully and intentionally used, reproduced, and/or copied the
> Plaintiff's Marks in connection with their manufacturing, distributing,
> exporting, importing, advertising, marketing, selling and/or offering to
> sell their Counterfeit Products.
> ....
> 74. The Defendants' actions have caused and are likely to cause
> confusion and mistake and to deceive potential consumers and the
> general purchasing public as to the source, origin or sponsorship of
> their Counterfeit Products, and are likely to deceive the public into
> believing that the Counterfeit Products sold by the Defendants originate
> from, are associated with, or are otherwise authorized by the Plaintiffs,
> all to the damage and detriment of Plaintiffs' reputation, goodwill and
> sales.
>
> Those allegations sufficiently plead that Defendants used Plaintiffs'
> marks in a manner likely to cause confusion among consumers, and

> thus the amended complaint adequately states claims under sections 32 and 43(a) of the Lanham Act.

*C & L Int'l Trading Inc. v. Am. Tibetan Health Inst., Inc.*, 2013 WL 6086907, at *4 (S.D.N.Y. 2013).

## POINT II

### Mr. West Should not Benefit from the "Particularly Compelling" Standard

In the event that this Court finds artistic relevance in the name and the Clips, it is respectfully submitted that the appropriate remedy would be a determination that the consideration of the Polaroid analysis be conducted under the particularly compelling standard as instructed by Twin Peaks. *Twin Peaks Prods., Inc. v. Publications Int'l, Ltd.*, 996 F.2d 1366, 1379 (2d Cir. 1993). The determination as to the standard may be made at this time, despite the fact that the likelihood of confusion analysis may be determined to be conducted after discovery. *Id.*

Mr. West should not benefit by the particularly compelling standard where Defendants themselves selected the name LOISAIDAS and attempted to use that as the very basis for their claim that the title is artistically relevant.   The subject music videos are not a parody of LOISAIDAS, nor is the title of the series of clips artistically relevant to any existing group that calls themselves LOISAIDAS, i.e. the videos are about the Defendants' new coined LOISAIDAS group, not the Plaintiff's LOISAIDAS.

In his October 2 filing, Mr. West argues that only some of the characters in the Clips are contributing to the rap music contained therein.  Mr. West fails to address the fact that Defendants are the ones that came up with the name of an organization called LOISAIDAS, the same name and spelling of Plaintiff's registered trademark.  Mr. West

then claim that defendants are permitted to entitle their series of clips LOISAIDAS because they labeled their group by the same name.  This is certainly not the artistic relevance that our Second Circuit Court of Appeals has discussed in any of the controlling precedent on this issue.

Indeed, all of the cases involve either an author's use of a name in a parody or an author's use of the name of a performer or person without their consent.  Mr. West appears to urge that this Court depart from the Second Circuit requirement that the <u>Polaroid</u> factors be applied, and instead follow *Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 902 (9th Cir. 2002).  But in *Mattel*, "the song is about Barbie and the values Aqua claims she represents".  *Id.*   Accordingly, this case would be applicable, though obviously not controlling, if the Defendants here were referencing the Plaintiff's LOISAIDAS group in their Clips.

Here, the Defendants are referring to themselves, the group that they labeled LOISAIDAS. It is respectfully submitted that this kind of blatant theft of a trademark has no artistic relevance and does not invoke the heightened application of the <u>Polaroid</u> factors that is required when there is some artistic relevance in a book or movie title. *Rogers v. Grimaldi* was a right of publicity case that did not involve a registered trademark.  The Defendants were using the names of two well-known performers.  The court held that "in the context of allegedly misleading titles using a celebrity's name, that balance will normally not support application of the Act unless the title has no artistic relevance to the underlying work whatsoever, or, if it has some artistic relevance, unless the title explicitly misleads as to the source or the content of the work[2]".

———————————————

A review of footnote 5 illustrates that the *Rogers* court was not intending to allow the use of titles that are confusingly similar to trademarks.  "This limiting construction would not apply to misleading titles that are confusingly similar to other titles.  The public interest in sparing consumers, this type of confusion outweighs the slight public interest in permitting authors to use such titles".  *Id.* (Emphasis Supplied).  See *Tri-Star Pictures, Inc. v. Leisure Time Prods., B.V.*, 749 F. Supp. 1243, 1253 (S.D.N.Y. 1990) *aff'd,* 17 F.3d 38 (2d Cir. 1994) ("the footnote to the Court's holding in *Rogers* specifically states that it does not apply to claims, like Academy's, of confusingly similar titles").

This continues to follow settled precedent on the issue.  "Misleading commercial speech is beyond the protective reach of the First Amendment".  *Vidal Sassoon, Inc. v. Bristol-Myers Co.*, 661 F.2d 272, 276 (2d Cir. 1981) *quoting Central Hudson Gas & Electric Co. v. Public Service Comm'n*, 447 U.S. 557, 566, 100 S.Ct. 2343, 2351, 65 L.Ed.2d 341 (1980).  Judge Sand utilized this same reasoning to grant summary judgment to a Plaintiff despite the Defendants' claim that it has artistic relevance. *Simon & Schuster, Inc. v. Dove Audio, Inc.*, 970 F. Supp. 279, 296 (S.D.N.Y. 1997).

Accordingly, Mr. West should not be permitted to utilize the title of the Plaintiff's group LOISAIDAS to portray a group also called LOISAIDAS, both in the content and title of the video.  To the extent that the Court views this formula as meeting the artistically relevant test, the motion should be denied in any event, to allow the parties to brief the issue of likelihood of confusion pursuant to the *Polaroid* factors following discovery.

"The '*Polaroid* factors' were first set out by Judge Friendly in *Polaroid Corp. v. Polarad Electronics Corp.,* 287 F.2d 492 (2d Cir.), *cert. denied,* 368 U.S. 820, 82 S.Ct. 36, 7 L.Ed.2d 25 (1961). The Second Circuit has reaffirmed their applicability in trademark cases. *See, e.g., Time, Inc. v. Petersen Pub. Co.,* 173 F.3d 113, 117 (2d Cir.1999)."   *Guthrie Healthcare Sys. v. ContextMedia, Inc.*, 28 F. Supp. 3d 193, 206 (S.D.N.Y. 2014)(Forrest, D.J.)

Mr. West's citation to *Cummings* is misplaced.   *Cummings* is a right of privacy case where the Plaintiff was pictured on DVD sets and promotional materials.   The court did not entertain a registered trademark and did not apply the *Polaroid* factors.   "The DVD sets here are artistic works, and the Complaint does not allege facts that could possibly show that consumers are likely to be confused about the source or ownership of those works because of the depiction of Plaintiff, among many other artists, in and on the DVD sets." *Cummings v. Soul Train Holdings LLC*, 67 F. Supp. 3d 599, 606 (S.D.N.Y. 2014).

*DeClemente* is a not controlling upon this court but is nevertheless entirely distinguishable.   It involved an individual that registered the trademark "Karate Kid" years after the motion picture "The Karate Kid" was released by Columbia Pictures. *DeClemente v. Columbia Pictures Indus., Inc.*, 860 F. Supp. 30, 46 (E.D.N.Y. 1994). The Court further found that Plaintiff's trademark was not protectable. Id.  "Having determined that, despite the registration of the plaintiff's service mark, the mark has not acquired a secondary meaning and therefore is not protectable under the trademark laws, it is not necessary for the Court to continue with an analysis of the second-prong

of a claim for infringement; namely whether the defendants' allegedly infringing mark is likely to cause consumer confusion". *Id.*

In another case cited by the Defendants, *Lemme v. National Broadcasting Company,* since there was no dispute at to artistic relevance, the Eastern District carefully studied the mark American Dream in the context of the *Polaroid* factors and, relying in part upon NBC's good faith and an extensive trademark search conducted by NBC, held that there was no likelihood of confusion. *Lemme v. Nat'l Broad. Co.*, 472 F. Supp. 2d 433, 446 (E.D.N.Y. 2007).

Again, the facts at hand do not support the Defendants' argument that this case can be resolved before discovery and without application of the <u>Polaroid</u> factors.

"Here, neither party has suggested that "American Dreams" is of no relevance to Defendant's show. The question, then, is whether the title "explicitly misleads as to the source or content of the work." *Id.* This determination is made, in the first instance, by application of "the venerable *Polaroid* factors." *Id.* (referencing *Polaroid Corp. v. Polarad Elecs. Corp.,* 287 F.2d 492, 495 (2d Cir.1961)). However, "the finding of likelihood of confusion must be particularly compelling to outweigh [Defendant's significant] First Amendment interest." *Id. Lemme v. Nat'l Broad. Co.*, *supra* (quoting *Rogers v. Grimaldi,* 875 F.2d 994, 999 (2d Cir.1989)).

**POINT III**

**Even if the Court Finds that the Defendants' Selection of LOISAIDAS as a Name for Their Group, and Subsequent Use of the Mark to Identify Music Videos is Artistically Relevant, the 12(b)(6) Motion Should be Denied**

In the event that this Court finds that Defendants were permitted to select the same mark as the Plaintiff and that there is some artistic relevance, "the question then is whether the title is misleading . . . This determination must be made, in the first instance, by application of the venerable *Polaroid* factors. However, the finding of likelihood of confusion must be particularly compelling to outweigh the First Amendment interest recognized in *Rogers.*" *Twin Peaks Prods., Inc. v. Publications Int'l, Ltd.*, 996 F.2d 1366, 1379 (2d Cir. 1993)(citations omitted)(emphasis supplied). Accordingly, the motion would be denied in any event, since it does not involve analysis of the *Polaroid* factors pursuant to a standard that would permit resolution on the merits.

The Defendants have argued that the matter can be resolved by accepting the Plaintiff's pleadings as true. However, the pleadings, if taken as true, set forth blatant trademark infringement, actual confusion and bad faith.

Simultaneously, Defendants at times seek to have the Court reject certain allegations without allowing an opportunity for discovery by making self-serving factual statements, that discovery will ultimately prove to be fallacious. For example, Defendants argue that their use of the term LOISAIDAS is in conjunction with the word DAMON DASH STUDIOS and "couples the title with a handgun". Discovery will show that Defendants utilized the mark LOISAIDAS many times by itself and many times in the same or similar font as is utilized by the plaintiff. While there are occasions where

11

the Defendants' use of the mark is with stylized font, coupled the title with a handgun, and adjacent to the name "Damon Dash Studios", these uses are certainly not the only way Defendants use the mark.   *Compare* Exhibits B and C to exhibits D and E in the Second Amended Complaint.

It is settled that where both Plaintiff's and Defendant's marks consist of the same word, minor differences are inconsequential. *Savin Corp. v. Savin Group*, 391 F.3d 439, 458 (2d. Cir. 2004) (subtle differences in fact are inconsequential where same mark used); *Virgin Enterprises Ltd. v. Nawab*, 335 F.3d 141, 149 (2d Cir. 2003) (any differences in the marks "are quite minor" in relation to the fact that the name being used was the same); *Rosenthal v. Ritelite,* 986 F.Supp. 133, 143 (E.D.N.Y. 1997) ("the differences in typeset are not so significant as to reduce the impact of similarity"); Toys *R Us, Inc. v. Canarsie Kiddie Shop, Inc.*, 559 F.Supp. 1189, 1197 (E.D.N.Y. 1983) ("minor lettering differences are unlikely to be noticed by many consumers and are undetectable when the two marks are spoken").

Defendants decided to name the gangsta rappers with the same name used to identify Plaintiff's bachata band, LOISAIDAS**.**  Defendants were aware that Plaintiff owned the registered trademark for the word mark LOISAIDAS, but decided that it was an exciting name that would be attractive to the market, and therefore decided to steal the name.

Defendants have not cited any controlling authority that permits the court to grant a motion pursuant to Rule 12(b)(6) without an analysis of the likelihood of confusion between the marks pursuant to the *Polaroid* factors.  Defendants cite lower court cases that follow different standards.  For example, in a Central District of California case, the

court allowed Defendants to use the plaintiff's trademark "Route 66" as the title of a pornographic film.  But this case is not analogous at all.  It would be if the Plaintiffs there, for example, had a musical group known as the "66er's" and trademarked the name and then the Defendants started their own musical group called the 66er's which they released by way of a series of music videos all called the 66er's.

In *Woodard v. Jackson,* the Southern District of Indiana held that the Defendant's use of the Plaintiff's purported mark "Ripples and Waves" in the liner notes of a sealed CD package "could not have an effect on the purchasing decision of a consumer … Plaintiffs suggest that some customers might have read the liner notes before buying the CD, either by seeing a friend's copy or an opened store copy.  This theory is merely desperate speculation and is inconsistent with the Ninth Circuit's decision in *Rice* where such exposure to a friend's copy was also possible". *Woodard v. Jackson*, 2004 WL 771244, at *7-8 (S.D. Ind. 2004) It is also worthwhile that in *Woodard v. Jackson,* the Plaintiff's "abandoned any rights they may have had in the name ripples and waves". *Id.,* citing 15 U.S.C. §1127.

*Dillinger,* another Indiana District Court case cited by Mr. West, involved the use of Dillinger in video games, which utilized in some respects Tommy Guns, which the Court held can have some artistic relevance.  *Dillinger, LLC v. Elec. Arts Inc.*, 2011 WL 2457678, at *4 (S.D. Ind. 2011). First, this case has little value as it is a decision on a motion for summary judgment and not a Rule 12(b)(6) motion.  *Id.*  Further, its facts are far different. It would be analogous if the Plaintiff had formed a group called  "The Dillingers" and trademarked the name prior to the Defendants also forming a group called  "The Dillingers" and entitling a series of musical/video clips "The Dillingers".  But

13

that is clearly not with this Indiana case held.  The Court would not have allowed such use, as it is like the use of LOISAIDAS in this matter, "simply a disguised commercial advertisement for the sale of goods or services." *Id.*  quoting *Rogers,* 875 F.2d at 999, 1004 (2d Cir.1989).

Mr. West cites *Louis Vuitton Malletier S.A. v. Warner Bros. Entm't Inc,* but there, Judge Carter explained that case *did not involve "*confusion that the mark's owner sponsored or approved of the film, for this was the  precise type of confusion the court found actionable"  in *Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.,* 604 F.2d 200, 205 (2d Cir.1979).  *Louis Vuitton Malletier S.A. v. Warner Bros. Entm't Inc.*, 868 F. Supp. 2d 172, 180-81 (S.D.N.Y. 2012).  Judge Carter cited the inapplicability of *Dallas Cowboys Cheerleaders* to noncommercial speech and held that Plaintiff, Louis Vuitton, failed to recognize that the Second Circuit now uses the "particularly compelling" standard set forth in Twin Peaks when a title of a film is found to be artistically relevant.  *Louis Vuitton Malletier S.A. v. Warner Bros. Entm't Inc.*, *supra*, citing *Westchester Media v. PRL USA Holdings, Inc.*, 214 F.3d 658, 664-65 (5th Cir. 2000).

To determine whether an artistically relevant title misleads as to the source or content of the work, the Second Circuit applies the likelihood of confusion test used in evaluating standard trademark infringement claims. However, the likelihood of confusion must be "particularly compelling" to outweigh the First Amendment interests at stake". *Westchester Media v. PRL USA Holdings, Inc.*, 214 F.3d 658, 664-65 (5th Cir. 2000) *quoting Twin Peaks Productions,* supra at 1379.

Mr. West has not cited a single case that holds that a music video clip is subject to the particularly compelling standard.  And even if this Court holds that it is, the circumstances here, where the Defendants select the same name for their group as the Plaintiff's group and then caption the music video by the same name, do not have any of the artistically relevant characteristics that we have seen in any case since <u>Rogers</u>.

Finally, even if the Court finds that a music video is subject to <u>Rogers</u> and determines that the Defendants' conduct does ignite artistic relevance, this Rule 12 motion must be denied to afford the parties an opportunity to brief likelihood of confusion pursuant to the *Polaroid* factors following discovery on the issues.

## **Point IV**

## **The Defendants' LOISAIDAS is Clearly not "Fair Use"**

"[B]ecause fair use is an affirmative defense, it often requires consideration of facts outside of the complaint and thus is inappropriate to resolve on a motion to dismiss." *Kelly-Brown v. Winfrey*, 717 F.3d 295, 305 (2d Cir. 2013). See also *Merck & Co. v. Mediplan Health Consulting, Inc.*, 425 F. Supp. 2d 402, 412 (S.D.N.Y. 2006) (Fair use fails on a motion to dismiss, as the only question at that stage is the sufficiency of the pleadings, and Plaintiff should be given chance to prove consumer confusion); *M. Shanken Commc'ns, Inc. v. Cigar500.com*, No. 07 CIV. 7371 (JGK), 2008 WL 2696168, at *11 (S.D.N.Y. 2008) (Refusing to decide the issue of fair use on a motion to dismiss because the court could not conclude as a matter of law that the contested use was descriptive and that consumers would not be confused).

In rebutting any arguments, the Plaintiff must only plead "sufficient facts to plausibly suggest that they are entitled to relief." *Id.* See also *Ritani, LLC v. Aghjayan*, 880 F. Supp. 2d 425, 448 (S.D.N.Y. 2012) (Denying motion to dismiss after rejecting a finding of fair use and finding that Plaintiff alleged sufficient facts in Complaint to adequately plead claims against Defendant).

Oddly, Mr. West seeks to bolster his prior fair use argument by asserting, in his October 2 brief, that his use of LOISAIDAS is somehow similar to the "transformative work" *Lovelace* which referred to the pornographic works of a prior author.  *Arrow Prods., LTD. v. Weinstein Co. LLC*, 44 F. Supp. 3d 359, 368 (S.D.N.Y. 2014), *appeal dismissed* (Jan. 6, 2015).

> Here, the court finds that defendants' use, or recreation, of the three scenes from *Deep Throat* constitutes transformative use, adding a new, critical perspective on the life of Linda Lovelace and the production of *Deep Throat. Deep Throat* is a pornographic film containing seventeen scenes of explicit sexual content. Conversely, *Lovelace* is a critical biographical film that documents the tragic story of Linda Lovelace and provides a behind-the-scenes perspective on the filming of *Deep Throat.* It does not contain any nudity. Defendants have recreated the three challenged scenes in order to focus on a defining part of Lovelace's life, her starring role in *Deep Throat.*

*Arrow Prods., LTD. v. Weinstein Co. LLC*, 44 F. Supp. 3d 359, 368 (S.D.N.Y. 2014), *appeal dismissed* (Jan. 6, 2015).

Mr. West does not point to a single portion of the Defendants' LOISAIDAS Clips that refers, parodies, recreates, mentions or even alludes to the Plaintiff's bachata band LOISAIDAS.  They simply take the name and start using it to refer to their

group/organization/gang and then posit that the titles of the Clips to describe the stolen mark are permitted.

In the *Naked Cowboy* case, the use of "Naked Cowboy" at issue was the title of a brief online video clip of a soap opera episode in which a character played guitar and sang for several seconds while wearing only his briefs, cowboy boots, and cowboy hat. *Naked Cowboy v. CBS*, 844 F. Supp.2d 510, 514 (S.D.N.Y. 2012). The use of the mark at issue in that case was literally descriptive of what was contained in a short video clip; it was not the title of the entire soap opera series. Indeed, the words "Naked Cowboy" "did not appear anywhere during the Episode, nor were they spoken by any of the characters." *Id.* at 513.   Further, the Complaint "contained no allegations of actual confusion … no facts suggesting that Defendants acted in bad faith. And, despite numerous references to the high quality of Plaintiff's brand, the Complaint alleges no facts that suggest that Defendants' product is of low quality." *Naked Cowboy v. CBS*, 844 F. Supp. 2d 510, 517 (S.D.N.Y. 2012).

By contrast, the instant second amended complaint shows that the mark is arbitrary, that Defendants' adopted and used it in bad faith, that there is both actual and a likelihood of confusion and that  Defendants' product actually poisons the word mark by associating it with a gangsta rap group that embraces a culture of crime, corruption and violence.

## **CONCLUSION**

Accordingly, it is respectfully requested that the Plaintiff be permitted to amend

his complaint and that the Defendants' motion to dismiss pursuant to Rule 12(b)(6) be

denied.


Dated: New York, New York
     October 16, 2015


         Respectfully submitted,
         THE BOSTANY LAW FIRM, PLLC

         /s/ John P. Bostany
         By:    John P. Bostany
         Attorneys for Plaintiff
         40 Wall Street, 28th Floor
         New York, New York 10005
         (212) 530-4400