FC35medA                    argument

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

MICHAEL A. MEDINA,

                  Plaintiff,

          v.                        15 CIV. 2551 (KBF)

DASH FILMS, INC., DAMON DASH
and KANYE WEST, et al.,

                  Defendants.

------------------------------x
                                    New York, N.Y.
                                    December 3, 2015
                                    3:55 p.m.

Before:

                    HON. KATHERINE B. FORREST,

                                    District Judge

                          APPEARANCES

BOSTANY LAW FIRM, PLLC
     Attorneys for Plaintiff
BY:  JOHN P. BOSTANY
     CHAREN KIM

TURTURRO LAW, P.C.
     Attorneys for Defendant Damon Dash, *et al.*
BY:  NATARAJ BHUSHAN

PRYOR CASHMAN, LLP
     Attorneys for Defendant West
BY:  TOM J. FERBER
     DYAN FINGUERRA-DuCHARME

FC35medA                          argument

1          (Case called)

2          THE DEPUTY CLERK:  Counsel, please state your names

3    for the record.

4          MR. BOSTANY:  Good afternoon, Judge Forrest.  John

5    Bostany for the plaintiff.  I am here with my colleague Charen

6    Kim.

7          MS. KIM:  Good afternoon, your Honor.

8          THE COURT:  Good afternoon both of.

9          MR. FERBER:  Good afternoon, your Honor.  Tom Ferber

10   with my partner Dyan Finguerra-DuCharme, Pryor Cashman on

11   behalf of Kanye West.

12         MR. BHUSHAN:  On behalf of Damon Dash, Nataraj

13   Bhushan.  Good afternoon, your Honor.

14         THE COURT:  All right, folks.  We are here on the

15   motion to dismiss and oral argument on that motion.  I don't

16   always ask for argument, in fact I would say that it is less

17   than 50 percent of the time.  I asked for argument here because

18   I wanted to understand, in particular, what the best arguments

19   were on both sides.  I'm not sure that the papers, particularly

20   I will say for the plaintiff, told me everything I need to

21   know.  So let me tell you, Mr. Bostany, in particular, what I

22   need to understand, which is what are the facts that you have

23   to support the allegations that you have made of actual

24   confusion or that there is some form of potential confusion for

25   plaintiffs?  Because right now the allegations are what I would

1   consider to be conclusory and that leads to two issues, one is

2   a *Twombly* issue, as you know, and that's one of the things the

3   defendants have argued for; and two, to get to *Twin Peaks* you

4   have got to have the first point of:  Is there something that's

5   expressive in the title?  Yes.  Is it possibly misleading?

6   Apart from the assertion that there is something misleading I

7   just don't see it in the factual allegations of the complaint.

8   So, at a basic level, I don't know it is there.

9          Now, you may have something and if you have got

10  chapter and verse for that and four people lined up who are

11  going to talk about how misleading it was, then that would be

12  useful.  So, I throw that out there.

13         Let me hear from the defendants first, it is their

14  motion, and then we will have you respond and give you some

15  time to put your thoughts together.

16         MR. BOSTANY:  Yes.

17         THE COURT:  Thank you.  So, Mr. Ferber.

18         MR. FERBER:  Thank you, your Honor.

19         THE COURT:  You can turn that mic down I had a 6'8"

20  person here earlier today.

21         MR. FERBER:  I don't need a mic aimed a little bit

22  higher.

23         Your Honor, in this case the plaintiff is effectively

24  trying to limit the urban lexicon by attempting to arrogate the

25  right to control what is a fairly widely used term in the urban

1    vernacular, especially in the greater New York area, it's a

2    term that it's not disputed that the plaintiff did not create,

3    it's not disputed that it was officially recognized by the City

4    of New York before the plaintiff chose to use it in relation to

5    his Latino urban bachata musical duo.

6          THE COURT:  Can I have you build in to this -- and it

7    may be where you are going next -- I read *Twin Peaks* and

8    *Grimaldi* and they're in a bit of tension.  I think we can agree

9    one sets one kind of question and the second note in *Twin Peaks*

10   suggests that if you did a *Rogers* versus *Grimaldi* inquiry alone

11   under certain circumstances it wouldn't be enough.  So, let me

12   ask you for the following -- let me ask you the following

13   question based upon what you were just saying because I

14   understand that loisaida is a word that certainly the Court had

15   heard years and year and years and years ago.

16          There is one way in which that point goes to whether

17   there is any cognizable trademark, not a question for today.

18   Right?  That's a different question which might be part of

19   these proceedings overall but it is not a question on the

20   motion to dismiss.  I'm not going to decide whether or not

21   there is trademark protection on the motion to dismiss.  So,

22   the question becomes whether or not the use of a term like

23   "loisaida" can, if it has some sort of expressive purpose

24   behind it, both nominally be the same as a trademarked word,

25   here the Loisaidas group, but nonetheless not constitute any

1   kind of infringing conduct because it is simply the utilization

2   of an expressive term.  That is the *Rogers v. Grimaldi* case.

3          So, my question to you is would you agree with me that

4   if there was proof of some number of consumers who in fact were

5   misled, or had circumstantial evidence that they were very

6   likely to be misled, that we would go into a Twin Peaks

7   analysis which would require the Polaroid factors.

8          Do you follow me?

9          MR. FERBER:  I believe I do, your Honor.

10         With respect to whether there was proof that, you

11  know, how do we address that?  Well, first, we know that.  We

12  know we are already up to the third iteration of the complaint,

13  that that iteration of the complaint was filed many months

14  after the film first came out.  The film was old news by the

15  time that second amended complaint was filed and, as you just

16  pointed out, what I think was going to be one of the key points

17  of my argument, the allegations of actual confusion and of

18  likelihood of confusion in the second amended complaint are

19  completely conclusory and threadbare.  It is as if they were

20  checking off the list, what the Supreme Court called the –- I

21  think it may have been in *Iqbal*, just the standard

22  defendant-harming-in-an-unlawful-way allegation.  There is

23  nothing to them.  And the Court had ordered, when it allowed

24  the second amended complaint to be filed, there be no more

25  amendments.  So, I don't know what they do now given that but

1    that's for your Honor to decide, not for me to debate further.

2           Second, with respect to that issue, there are a number

3    of cases in our brief -- there may have been I'm not sure if it

4    was *Amman* or *Volvo* that said a few isolated instances of

5    confusion are not the kind of confusion we are talking about.

6    Okay?

7           Third, we will come to the fair use point but if you

8    don't mind can I defer that --

9           THE COURT:  Yes.

10          MR. FERBER:  -- because I think that's going to be

11   pertinent because I want to say something about the plaintiff's

12   reliance on *Twin Peaks*.

13          First, let's not forget that *Twin Peaks* is a 1993 case

14   which long preceded the Supreme Court's raising the bar for a

15   legally sufficient please pleading in *Iqbal*.

16          Second, in the portion of the *Twin Peaks* decision that

17   said, well, we've got this problem here so I think we probably,

18   on the second prong of *Rogers*, have to go to a Polaroid test,

19   it focused first, it identified what I kind of regard as

20   aggravating factors in that case and it described the

21   aggravating factors in general the wording and appearance of

22   the book as title.  It said, look, the book doesn't just take

23   the two words "Twin Peaks," it precedes them with the words

24   "Welcome to" which is how each episode of the television series

25   was presented, introduced to the public on a street -- on kind

FC35medA                          argument

1    of a wooden roadsign and the book's title put it against a

2    wooden slab meant to evoke that sign.

3              THE COURT:  Well, to put it differently, *Twin Peaks*

4    was about Twin Peaks.  It is the equivalent here if you were to

5    directly analogize of Loisaidas film being about the Loisaidas

6    snippets or commentary on the Loisaidas group.

7              MR. FERBER:  Yes.

8              THE COURT:  That would be, I think on all fours more

9    directly.

10             MR. FERBER:  If there were additional aggravating

11   circumstances.  In other words, that's just the first part of

12   it, that *Twin Peaks* was about the show Twin Peaks but they were

13   doing a little bit more to say we're not just about it, that

14   these aggravated circumstances about the graphic presentation,

15   to use a broader term for it, the Court found an aggravating

16   circumstance and said, well, maybe because of that we have to

17   consider the Polaroid factors.

18             I don't, off the top of my head, actually -- I can't

19   think of a Second Circuit case that has reiterated any,

20   post-*Iqbal*, the need to put it another way, that you can't

21   dismiss on a Rule 12 motion a trademark claim pre-discovery

22   because of *Polaroid* or because of *Twin Peaks*.  *Iqbal* raised the

23   bar, it is a different test.  The standard for plausibility now

24   becomes very important and it is not just plausibility.  If you

25   combine the threshold of plausibility from *Iqbal* with the

FC35medA                          argument

1      particularly compelling threshold which jumps it up another

2      notch, boy it becomes awfully hard where an expressive work is

3      what's being attacked, for a plaintiff to meet the *Iqbal*

4      standard.

5              Third, I think, given how many cases there have been

6      in which there have been Rule 12 dismissals of Lanham Act

7      claims and some not even where expressive works were concerned,

8      I think that the law has advanced quite a bit in the last 22

9      years.  Expressive works clearly, the general trend seems to be

10     they are getting more protection than they were getting a

11     quarter of a century ago.

12             THE COURT:  So, let me sort of rephrase that which is

13     another way -- we focused an awful lot over time in this case

14     on the First Amendment issues.  Another way of focusing would

15     be first and foremost on the *Twombly* issues and then,

16     secondarily, on the First Amendment issues.

17             MR. FERBER:  Yes, your Honor.

18             In short, it's our position that the first issue, as

19     we basically put it in our briefs, is the *Iqbal*, *Twombly* test

20     which is informed by, we respectfully submit, both the First

21     Amendment concerns and the statutory fair use concerns.

22             THE COURT:  And I am saying this because I want to

23     make sure I understand your argument and also clue Mr. Bostany

24     in to certain things that he may want to address which is, as I

25     read *Iqbal*, it requires some amount of factual content to make

FC35medA                          argument

1    a claim not only stated in terms of the boiler plate language

2    but also plausible that one has some sense that it exists.

3    But, separate and apart from that, because of the value to

4    First Amendment expressive conduct, in order to get to *Twin*

5    *Peaks* you have got to show that something is misleading which

6    is *Twombly*, if you will, at least.  How much further beyond

7    *Twombly* one has to go one doesn't need to be decided here if

8    one does not believe that *Twombly* has been met in the first

9    instance.

10            MR. FERBER:  Correct.  Not only do have you to meet

11   *Twombly* but if there is any question whether that plausibility

12   standard has been met, then you have to test the allegations

13   that may or may not be plausible against the higher threshold

14   of that particularly compelling standard.  That, I think, is

15   what the sum total of it is.

16            THE COURT:  Let me ask you how you think the Court

17   can, legitimately -- the extent to which the Court can take the

18   videos themselves into consideration on this motion?  In other

19   words, they are incorporated by reference, I agree.  The

20   question is to what extent -- how one articulates the

21   utilization of those.  In other words, when something is

22   incorporated by reference, is it as if the video is embedded in

23   the complaint itself?

24            MR. FERBER:  Yes, your Honor.

25            THE COURT:  And therefore one can describe what's on

FC35medA                                argument

1    the video without running afoul of Rule 12?  Or does that run

2    us into Rule 56 issues?

3            Do you see what I'm saying?

4            MR. FERBER:  Oh, absolutely.  I think it is clear.

5            Look.  Before videos existed, your Honor, I think

6    there was case law that said, hey, if a complaint is based on a

7    contract and they don't append the contract as an exhibit to

8    the complaint, the defendant can introduce that contract on a

9    12(b)(6) motion and that doesn't convert it from a 12(b)(6) to

10   something else.  If it were a letter that was alleged to

11   perpetrate a fraud you can introduce the letter even if the

12   plaintiff chase not to.

13           THE COURT:  And quote from the letter.

14           MR. FERBER:  And quote from the letter.

15           THE COURT:  And describe the letter.

16           MR. FERBER:  Yes.  And I think the law even goes

17   further then and certainly now which says if something like

18   that -- in that case two documents and in this case a video --

19   are so integral to the complaint, the plaintiff's

20   characterizations or, we respectfully submit in this case gross

21   mischaracterizations of the content of it, are trumped by what

22   the Court sees itself on the screen.  It doesn't matter how

23   they describe it.  What is not contested between us is this

24   film exists.  The content isn't in dispute because it speaks

25   for itself.  Now it is up to the Court to look at that content

FC35medA                          argument

```
 1   and decide how that affects the legal analysis.
 2           THE COURT:  To the extent that the Court is fitting
 3   its review of the content within the allegations in the
 4   complaint.  In other words I wouldn't do -- the Court, you
 5   would agree, wouldn't do a Polaroid analysis on the video at
 6   this stage of the case?
 7           MR. FERBER:  That's a trickier question.  I don't
 8   think the Court has to, by the way.
 9           THE COURT:  I think I would have to convert it to Rule
10   56 and have you folks do a whole lot of additional briefing if
11   one was going to get to Polaroid.
12           MR. FERBER:  First of all --
13           THE COURT:  In full --
14           MR. FERBER:  One of the questions, when a Rule 12 case
15   is dismissed under Rule 12 is just kind of glossed over -- or
16   in some cases even more than glossed over -- the Polaroid
17   issues are to what extent have these things even been alleged.
18           THE COURT:  I think that goes back to the *Iqbal*
19   *Twombly* situation.
20           MR. FERBER:  Exactly, your Honor.  It does.
21           But, at the bottom line, I think the cases stand for
22   the proposition that still, the ultimate inquiry is whether it
23   can be plausibly stated that an appreciable number of
24   ordinarily prudent consumers would be confused, by -- in this
25   case -- the film.  That's the big question that supersedes it
```

FC35medA                                  argument

1    all.  And, as I said, we have cited a number of cases in which

2    the Court has, in some cases, not bothered with and some cases

3    said they've noted the Polaroid issue but said it really isn't

4    a bar to us here because we are focusing on this ultimate

5    question, *LBF Travel*, *Louis Vuitton*, *Techmarine*, Ahmed, *deVere*.

6           So, I don't think I need to say -- we pretty much

7    already subsumed the First Amendment part of this discussion

8    which was really focusing on the prong to of the Rogers test

9    which is misleading.  I think there is no question that the

10   first prong, artistic relevance between the title and the body

11   of the work, is met.  Certainly, for instance, if it was met in

12   *Roxbury*, the Route 66 case, which was a porn film the title of

13   which was "Route 66" which had virtually no connection to the

14   interstate and the plaintiff owned a trademark on Route 66, if

15   that passed the test a fortiori this does, the Courts have

16   repeatedly stated it is basically more than zero because of the

17   First Amendment interest concerned.

18          In terms of the second prong, the issue might even be

19   easier than what we just discussed because the second amended

20   complaint does not even identify or allege any explicitly

21   misleading aspect of the title, any affirmative

22   misrepresentation as the other -- as the number of cases call

23   it.  It is not there.  They've had three shots and it is still

24   not there.  And as we have referenced on actual confusion or

25   likelihood of confusion, it is threadbare and conclusory.

FC35medA                          argument

1          I do think, in the context of this case, it's

2   important to take note of a few things.  Every -- both the film

3   itself and as you will see in viewing it and every chapter of

4   it --

5          THE COURT:  I have watched -- I don't know if I have

6   watched every minute of it but I have certainly watched a lot

7   of it.

8          MR. FERBER:  If you see the opening minute of each of

9   the eight chapters, every one has the "Damon Dash Studio

10  Presents" very, very prominently -- by the way, I think that

11  chapters 2 through 8 -- and maybe chapter 1, but chapter 2

12  through 8 don't have Loisaidas, they just have the chapter

13  title.  And, frankly, as many books might but they always

14  emphasize, "Damon Dash Studio Presents."  That's the source

15  denoter.  It is worth noting because there is obviously always

16  a concern about what is the source identifier here?

17         The *Mattel v. MCA* case in the Ninth Circuit made an

18  observation I think that is probably made elsewhere, in fact

19  probably in the Seventh Circuit, which is that viewers and

20  readers of films and television shows and books don't really

21  expect to find out the source from the title.  That's somewhere

22  else.  I think it is interesting in that connection, your

23  Honor, that plaintiff's opposition really stayed away from,

24  just conspicuously ignored the *Rin-Tin-Tin* case which, on this

25  aspect, is very much on all four.

FC35medA                          argument

1            The Rin-Tin-Tin plaintiff said it is their mark.  They

2     said the defendant uses it in their title.  You are trying to

3     get trademark use out of it but it is our trademark.  And the

4     Court said, no, Rin-Tin-Tin describes something about the

5     content of the film, just like, we submit, Loisaidas here.  The

6     source is quite specifically stated by the two or three movie

7     studios that are named as the source of the film just like

8     Damon Dash is identified as the source here.  I thought it was

9     telling that plaintiff stayed away from that case.

10            THE COURT:  And the portion of the *Mattel* case that

11     you are thinking of is at pin 902, "A title is designed to

12     catch the eye and promote the value of the underlying work."

13            MR. FERBER:  I don't have the citation here.  The

14     language I was looking at was:  "Consumers expect a title to

15     communicate a message about the book or movie but they do not

16     expect it to identify the publisher or producer."

17            THE COURT:  Right, and that's the very next sentence.

18     Terrific.  I wanted to make sure I understood what you were

19     referring to.

20            MR. FERBER:  In this case not only do we have the

21     whole First Amendment *Rogers* issue where the plaintiff would

22     have to meet -- because it is an expressive work -- the

23     particularly compelling standard, but the law also notes that

24     by having used a, or in this case adopted a pre-existing and

25     widely used geographic term from the urban vernacular,

FC35medA                              argument

1   plaintiff kind of assumed the risk that there would be some

2   confusion.  So, when I said earlier, let me defer for the

3   moment the fair use issue, that's where it comes in.  Some

4   confusion in this case -- and there is none alleged in the

5   complaint except in that threadbare way -- would be, I think,

6   not relevant anyway.

7            THE COURT:  Well, then when you say fair I just want

8   to be clear.  The Court obviously could not do and typically

9   could not do a fair use analysis at the motion to dismiss

10   stage.  It is a heavily fact-intensive analysis.  What you are

11   suggesting is, in effect, a heightened pleadings standard when

12   something is a frequently used public term.  Whether or not it

13   has got a First Amendment protection there is also the sort of

14   the you-have-to-know-it-is-going-to-be-used effect.

15            MR. FERBER:  That's correct, your Honor.

16            THE COURT:  All right.  All right.

17            MR. FERBER:  The plaintiff -- well, I think that that

18   pretty much says it all.  The plaintiff had said you really

19   shouldn't even think about that issue here because our mark is

20   arbitrary but it is really a question of you look at how the

21   defendants use the mark, not how the plaintiffs do.  I don't

22   think that's germane here.  The defendants use the mark in the

23   sense it is used in urban vernacular, it refers to something in

24   a descriptive sense about the content of the film.  It is about

25   an Uptown Harlem drug lords gang that relocates to the Latino

FC35medA                          argument

1    Lower East Side and interacts in the neighborhood, with the

2    inhabitants of the neighborhood; there is mob slaying, there is

3    interaction with a crooked cop, etc.  It says there is actual

4    confusion but that's in the brief.  As we have said, there is

5    nothing really about it except the conclusory label, the

6    checkoff in the second amended complaint.

7             THE COURT:  Then let me hear from Mr. Bhushan.  Do you

8    have any additional argument that you would like to make?

9             MR. BHUSHAN:  No, your Honor.  We would join.

10            THE COURT:  Let me hear from Mr. Bostany or Ms. Kim

11   who was is going to be arguing for the plaintiffs.

12            MR. FERBER:  Thank you, your Honor.

13            MR. BOSTANY:  Thank you, your Honor.  I will be

14   presenting the argument.

15            I appreciate the Court having us in and if you see me

16   gasping for air, I'm perfectly fine.  I have a mild, super mild

17   case of asthma and when I open my mouth and take a gasp of air

18   I'm not yawning and I'm not having any respiratory difficulty,

19   I just have to do that once in a while.

20            THE COURT:  All right.  Well, if you need to use one

21   of those little pump things, you let me know.  I don't want you

22   passing out on me Mr. Bostany.

23            MR. BOSTANY:  I have never passed out.  I went to a

24   pulmonologist, he said you don't even need a pump thing you

25   have such a mild case.

FC35medA                                argument

1             THE COURT:  All right.

2             MR. BOSTANY:  All right.

3             So, I want to address first, your Honor, before I get

4     into the First Amendment analysis, a couple of the concerns

5     that the Court had that the Court was good enough to mention at

6     the outset.  So, I'm going to start with *Iqbal Twombly*.

7             I agree with Mr. Ferber to the extent he indicated

8     that the analysis and the initial question that the Court must

9     address here is whether there has been confusion by an

10    ordinary -- a number of ordinary and prudent consumers.  He

11    didn't complete the sentence but I have completed the sentence

12    in paragraphs 87 and 98 and 107 of the complaint, at least, and

13    they say that if there is confusion, if there is likelihood of

14    confusion among an appreciable number of ordinary, prudent

15    consumers as to the source, origin, sponsorship, approval, or

16    affiliation of the defendants' services and/or products with

17    plaintiff's services and/or products, there would be liability

18    under the Lanham Act.

19            THE COURT:  So, tell me what the factual Rule 11 basis

20    is for paragraphs 87 and 98 other than the fact of the

21    trademark and the fact of the use of the name with the film,

22    two points which are, I think, obviously conceded.

23            So, has anybody been confused?

24            MR. BOSTANY:  Your Honor, I think that the Polaroid

25    factors get injected at two levels here.  Initially, when the

FC35medA                        argument

1   Court starts to analyze the pleading, the Court must look at

2   this and separate out the amendment, the First Amendment

3   analysis initially and say, okay, listen.  If this was not a

4   First Amendment case, has the plaintiff pleaded confusion?

5   Now, the defendants in their brief say the plaintiff has not

6   pleaded adequately for the confusion because the plaintiff has

7   not adequately alleged that the defendants are robbing the

8   goodwill that was formed by the plaintiff.

9          THE COURT:  But they're also arguing that you haven't

10  alleged any actual confusion or any circumstantial evidence

11  leading one to believe that there has even been a, even if you

12  are not able to show it clearly, a likelihood of confusion

13  between the mark and the film because the whole point of the

14  Lanham Act is that you are confusing the public as to the

15  sponsorship of a good.  It is not the fortuity of owning a word

16  or some rights to a word.  It's whether or not sponsorship is

17  at issue.

18          MR. BOSTANY:  Well, I do think that the Polaroid

19  factors do address a robbing of a word in order to circumvent

20  the Lanham Act.  I do think that it would be error to only

21  analyze forward confusion and require that plaintiff, in

22  addition, to prove actual confusion.  In fact, the Second

23  Circuit has said that plaintiffs, in trademark cases, almost

24  never are able to prove actual confusion.

25          THE COURT:  I agree and I have actually got, and I am

FC35medA                              argument

```
1   sure you have looked at them, some cases including a relatively
2   recent case on looking at both actual confusion as well as the
3   possibility of confusion through circumstantial evidence.  I
4   just issued a bench decision not too long ago on an extensive
5   discussion on the law in this regard.  So, the question is are
6   there any facts that suggest anybody might be confused by the
7   Loisaidas group and the Damon Dash film?
8              MR. BOSTANY:  Yes, your Honor, because if you look at
9   the analysis that the Court is required to employ, we look at
10  the factors.  Is Loisaidas a strong mark?  Is there similarity
11  between the plaintiff's registered trademark Loisaidas and the
12  use of the defendant's of Loisaidas?  Is there proximity of the
13  goods?  Are the goods that are being trafficked by the
14  defendants similar to the goods that are being trafficked by
15  the plaintiff?  The Court must look at these factors.  The
16  Court must look to see if there is a bridging of the gap.
17             THE COURT:  I only get to those factors if I have some
18  reason to believe that there is a single consumer in the world
19  who is ever likely to be misled.
20             MR. BOSTANY:  No, you're wrong.
21             THE COURT:  Well, this is where you and I will
22  disagree.  I believe that Twombly requires that you have to
23  give me some fact.  Now, I have to tell you, I can imagine
24  facts but I'm not here to make up things to put them into the
25  complaint but could I imagine a series of facts one could add
```

FC35medA                          argument

1   in?  I know how to do it.  I don't know if they would be at all

2   applicable here.  But, I can't just go on a conclusory

3   allegation, the Supreme Court has foreclosed that to you.  You

4   don't get to Polaroid unless you can show me something that

5   indicates that there is some person who is going to think

6   potentially -- and it has to be, by the way, an appreciable

7   number of consumers -- even potentially -- could be confused.

8         MR. BOSTANY:  Your Honor, we get to plead that there

9   will be confusion as to source and sponsorship.  We get to

10  plead reverse confusion which we have done.  We get to say that

11  the defendants are stealing the mark; that people, when they

12  look at this name of this group that the defendants are a

13  super-powered entertainment mogul -- Kanye West is probably the

14  most powerful entertainment mogul we know -- that when the

15  public sees Kanye West's Loisaidas rap group are they going to

16  think about my client's Puerto Rican --

17        THE COURT:  Tell me about somebody who is in a

18  potential market area -- well, I'm not going to give you the

19  facts that I could imagine but what do I have?  What do I have

20  to get me by *Iqbal Twombly* apart from your assertion that it

21  must be so because the names are the same?  That's the fortuity

22  of ownership that I mentioned.

23        MR. BOSTANY:  That's not the only thing I said.

24        I said the names are the same, the mark is a strong

25  mark, the products are proximal.

1          THE COURT:  These are the Polaroid factors.

2          MR. BOSTANY:  These are the Polaroid factors.  How

3     could you put the cart before the horse?  How could a federal

4     judge say I know when I am not going to get --

5          THE COURT:  Because the federal judge has to be bound

6     by Supreme Court precedent and if *Iqbal Twombly* tells me that

7     what I have to do is make sure that you're not just guessing

8     because of the fortuity of ownership you have one musical group

9     and then you have somebody else who is singing songs over on

10    the other side, they both use the name Loisaidas, you have one

11    who has a big pile of cash and a deep pocket, that fortuity

12    doesn't get you in the title alone.  It doesn't even get you to

13    *Twin Peaks*.

14         MR. BOSTANY:  Your Honor, fortuity of same mark, same

15    goods, proximal products, similarity of everything else that's

16    in the Polaroid factors, I think that -- how does a plaintiff

17    prove more without discovery?

18         THE COURT:  All right.  So, here is the thing.  Often

19    what, and I am sure when you litigate trademark cases a lot you

20    would know -- and I'm sure you do -- that there are often times

21    when there will be somebody who has taken an action believing

22    one thing is like the other, or people say, ooh, I was

23    confused.  That happens actually relatively frequently and it

24    gets cited.  Or, you will have a similar demographic and you

25    will talk about a similar demographic.  We have got the same

FC35medA                          argument

1    audience, we know, we have done consumer studies blah, blah,

2    blah.  There are all kinds of ways of doing this.  There are

3    lots of Lanham Act cases that talk about what you have got to

4    plead to plead the element of likelihood of confusion.

5         MR. BOSTANY:  I'm pretty sure that we have pled

6    similarity of products, similarity of consumers.

7         THE COURT:  All right.  You have certainly put in the

8    words.  I don't doubt that you have got the -- you have recited

9    what would be the conclusory allegations of the claim.  I don't

10   think anybody is suggesting you have left out a conclusory

11   allegation.  The question is whether or not under the current

12   law that's enough.  I understand your point is you think you're

13   well and truly there, that you're more than there and that it

14   would be error, as you said, for me to dismiss the case without

15   it.

16        MR. BOSTANY:  What I will concede is this.  I think

17   that in order for either side to try to persuade Judge Forrest

18   that they win here, discovery is needed.  But I will concede

19   that if I had said, if my clients had a Pepperidge farm loaf of

20   bred called Loisaidas and it was sold in Food City or Whole

21   Foods and I said, well, look.  We own this Loisaidas brand of

22   bread and the defendants are a deep pocket, they have a musical

23   group called Loisaidas that they're publicizing a film for.  We

24   want to cash in on that.  You have the jurisdiction, I

25   respectfully submit -- I don't know if I'm right or wrong, this

FC35medA                              argument

is my opinion -- you would then have the jurisdiction to say,

look, I'm not even going to entertain this case.  It is so far

fetched that the purchasers of a loaf of bread are going to

confuse the defendant's Kanye West music video that I'm

dismissing the case.

          THE COURT:  They wouldn't have ownership of the mark

in that particular product area so it would be dismissed even

before that.

          MR. BOSTANY:  I can go through the Polaroid factors

right now on this opinion and I could say that the plaintiffs,

I don't care how good a lawyer John Bostany is, the plaintiffs

cannot prove that this loaf of bread is going to be confused.

But here it is a very close call.  I almost, as you know at the

initial conference, I asked you to let me move for summary

judgment I was so convinced that you could decide this without

the need for extensive discovery.  I wanted to do a brief

period of discovery.

          THE COURT:  I believe you believe.  I believe you

believe.  And I believe that you think that Loisaidas attached

to music is enough.  And I am certain that it is not.

          MR. BOSTANY:  I think that --

          THE COURT:  As a result, if you don't have anything

else on likelihood of confusion then I think we don't need to

go any further.

          MR. BOSTANY:  I would like to mention that there is a

FC35medA                          argument

1    case that the defendant cited repeatedly in their reply

2    memorandum, *Radio Channel Networks*, and it talks about good

3    faith and it says that where a defendant uses a mark in a

4    descriptive manner, there is no forward confusion.  It doesn't

5    use the word forward confusion but it is talking about forward

6    confusion.  It precludes -- it cites cases that say, that

7    involved forward confusion that say where the defendant is not

8    seeking to benefit by the goodwill of a plaintiff there is no

9    bad faith.  And that's obviously a very important Polaroid

10   factor and a very important factor that even if your Honor

11   doesn't get to Polaroid, I believe, must be considered.

12          Judge Scheindlin looked at that in another case --

13          THE COURT:  Well, I think that bad faith is something

14   which, if it ever got there, let's put it this way, you have

15   alleged specific facts that indicated that prior to release

16   someone, on behalf of your client or your client himself,

17   notified the defendants here of the Loisaidas trademark.  So, I

18   think that knowledge prior to release is something which is in

19   the complaint.  So, that point I'm not particularly concerned

20   about.

21          MR. BOSTANY:  Okay.  Let me just give you the cite in

22   case while you are considering it you get concerned over that

23   argument that the defendants made.  I brought it with me, it is

24   Something Old, Something New, by Judge Scheindlin.  The cite is

25   99 WL 1125063.  It says that while failure to conduct a

FC35medA                          argument

1    trademark search is not per se bad faith, that the Court needs

2    more and cannot decide this.   I think this was a Rule 56

3    motion -- she refused to decide this on Rule 56 because they

4    said that the fact that the defendants did not conduct the

5    trademark search or consult with counsel prior to using the

6    terms requires that the motion be denied.

7            Here the defendants introduced a declaration

8    indicating what only counsel have argued in this motion which

9    is that the mark was used in a descriptive manner and those

10   arguments you see only by way of counsel argument.   Here, in

11   the Judge Scheindlin case they did more, the defendants came in

12   and they put in a declaration.   The Court said that's still not

13   enough on a motion for summary judgment.   So, I wanted to bring

14   that to the Court's attention.

15           I also wanted to bring to the Court's attention that

16   the mark that the defendants used was Loisaidas, it was not

17   Loisaida.   Loisaida in the singular is the name -- is an urban

18   vernacular name of a Lower East Side neighborhood.   The only

19   party that which there is evidence of which that have the mark

20   Loisaidas in the plural is the plaintiff and the plaintiff

21   registered that as a trademark.

22           So, I respectfully submit that while there are

23   multiple names that the defendants could have chosen to name

24   their film, they decided on the exact same name that the

25   plaintiffs used.

FC35medA                          argument

1          And I wanted to leave you with a well-cited oft-cited

2     statement about that defendants use the same exact name as a

3     registered trademark and it says that the numerous decisions

4     have recognized that the Second Circuit --

5          THE COURT:  I was going to ask you to slow down.  Poor

6     Pam has been with me all day long and you speak very quickly.

7     So, let's be sure it get it so I will have you slow down.  Tell

8     me the name of the case?

9          MR. BOSTANY:  *Mobil Oil v. Pegasus*, 818 F.2d 254.

10         In this Circuit and others, numerous decisions have

11    recognized that the second-comer has a duty to so name and

12    dress his product as to avoid all likelihood of consumers

13    confusing it with the product of the first comer.

14         And I believe -- I don't want to use the word I

15    believe -- I respectfully submit, Judge, that the defendants

16    here do not have a right to trigger the compelling standard

17    that's available under both *Twin Peaks* and earlier cases,

18    *Grimaldi*.

19         The defendants chose Loisaidas.  They knew or had

20    constructive notice that it was the plaintiff's trademark.

21    They cannot name the subject matter of the film by the same

22    exact name as our trademark and then come to you and say, well,

23    your Honor, we get this heightened standard because the title

24    of our film is "Loisaidas."  The cases they cite, like Route 66

25    and Dillinger and all those other cases are cases where the

FC35medA                    argument

1    defendants used, as part of their subject matter, an existing

2    name.  Route 66 existed already.  They didn't invent Route 66.

3    Dillinger existed already.

4            THE COURT:  So your argument there is that Loisaidas,

5    with an S, did not exist before the trademarking?

6            MR. BOSTANY:  Correct.  My argument there is that

7    there is no proof on this motion that Loisaidas was chosen by

8    the defendants because it is an artistic or an existing group

9    that the defendants had to talk about in an artistic fashion.

10   Here the defendants came up with Loisaidas.  There is no

11   argument in their papers that they had to pick Loisaidas

12   because they were talking about a -- something in society as we

13   know it and there is artistic relevance to it.  All of the

14   cases that they've cited involve a situation where a defendant

15   is talking about something in society as we know it, they're

16   talking about the multiple things.  You can read the cases but

17   none of them involve a situation where the defendants did what

18   the defendants did in this case which is they said, You know

19   what?  We are going to pick Loisaidas.  That's going to be our

20   artistic subject matter.  We are going to first infringe,

21   that's the first act, we are going to commit trademark

22   infringement and form a group -- a gang, a group, it doesn't

23   matter -- it is subjectively agreed to that they formed

24   something called Loisaidas.  So, they initially went out and

25   said you know what?  We are going to infringe.  And then they

1    start publicizing music videos and putting at the top of them

2    "Loisaidas."

3            In Exhibit A to Charen Kim's declaration there is a

4    representation of one of the pictures.  You can't even

5    basically read where it says anything about Damon Dash Films

6    unless you squint.  And the fact is that none of the cases

7    support such a notion where a defendant can go out, infringe,

8    and then get away with it because they call their movie or

9    music video -- it doesn't even matter at that point -- by the

10   same name, "Loisaidas."  It is they don't get artistic

11   relevance.

12           I respectfully submit that this motion can be denied

13   without even getting to the second analysis of the Polaroid

14   factors.  The plaintiff, I believe -- I don't want to say I

15   believe -- the plaintiff, I respectfully submit, pled this the

16   Court will decide, obviously, and the Court will also decide

17   whether or not there is artistic relevance.  If the Court

18   decides there is artistic relevance, obviously under *Twin Peaks*

19   you get back into the Polaroid factors in a much more detailed

20   way and that is something that I beseech the Court in my papers

21   to have discovery and have the Polaroid factors reviewed by way

22   of a Rule 56 motion or trial which is the result, I believe,

23   the *Twin Peaks* Court advised was the correct way to handle the

24   situation where the district judge feels there is artistic

25   relevance.

FC35medA                          argument

1          THE COURT:  Thank you.

2          MR. BOSTANY:  Thank you, Judge.

3          THE COURT:  Is there anything further, Mr. Ferber,

4     from the defendants whose motion it is or are we all set?

5          MR. FERBER:  One sentence, your Honor?

6          THE COURT:  All right.

7          MR. FERBER:  Just focusing on what's in the pleading

8     because the issue was just raised?  An exhibit to the second

9     amended complaint, plaintiff's own promotional material says,

10    at the beginning:  Loisaidas is the Spanish slang term for

11    Lower East Siders.  So, both with and without the SDN it has an

12    independent meaning.

13         Thank you.

14         THE COURT:  Thank you.

15         I'm going to go back and reread the cases and make

16    sure that I understand people's arguments in light of the cases

17    and then I will issue a ruling.

18         Given the holidays, don't expect it before the

19    holidays but it should be soon.  I know that this case has been

20    stayed since some of the motions were made quite some time ago

21    so we will get this thing onto its next step, whether that's

22    discovery or an appeal as you folks will figure out what to do

23    if I dismiss and, if not, I will set a conference date.

24         Thanks, folks.  We are adjourned.

25                              o0o