USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: July 14, 2016

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X
                                          :
MICHAEL A. MEDINA,                   :
                                          :
                  Plaintiff,       :
                                          :
                  -v-                 :          15-cv-2551 (KBF)
                                          :
DASH FILMS, INC., DAMON DASH       :       OPINION & ORDER
PROMOTIONS LLC, DAMON DASH MUSIC   :
GROUP LLC, DAMON DASH ENTERPRISES I  :
LLC, DAMON DASH, and KANYE WEST,     :
                                          :
                  Defendants.    :
                                          :
------------------------------------------------------------ X

KATHERINE B. FORREST, District Judge:

       Plaintiff Michael A. Medina's second amended complaint alleges trademark infringement in violation of Sections 35 and 43(a) of the Lanham Act, 15 U.S.C. §§ 1114(1) and 1125(a), and related state causes of action.  (ECF No. 57 [SAC] ¶¶ 63-124.)  Now before the Court is defendant Kanye West's motion to dismiss this complaint for failure to state a claim upon which relief can be granted, in which defendant Damon Dash joins.  (ECF Nos. 61 & 64.)

       For the reasons stated below, Medina's second amended complaint fails to adequately plead a claim, and the claims that are inadequately pled are in any event precluded by the First Amendment.  West and Dash's motion is therefore GRANTED and Medina's suit is hereby DISMISSED.

I.      INTRODUCTION AND BACKGROUND[1]

Medina began using the name "Loisaidas" in 2008 to refer to a Latin band he had created.  (SAC ¶ 2.)  Promotional materials attached to the second amended complaint introduce the group as "the Urban Bachata duo hailing from (NYC) Manhattan's Lower East Side, hence the name Loisaidas – which is the Spanish slang term for 'lower east siders.'"  (Id. Exh. B.)  Since its creation, the band has created music, which has been available for sale online and in other outlets and which has been played on the radio and charged on the Billboard Latin Tropical Airplay chart.  (Id. ¶¶ 31-32.)  There are Loisaidas music videos online, and the band has a nationwide following.  (Id. ¶¶ 35-36.)

In 2011 and 2012, Medina became the title owner of Registered Trademarks for the Loisaidas word mark in International Classes 9, 16, and 41.  (Id. ¶¶ 3, 22-23.)  These registrations include, among other things, an array of goods related to audio recordings of music and accompanying music videos.  (Id. ¶ 24 & Exh. A.)

In 2015, West and Dash, along with a number of corporate entities associated with Dash, created a piece or pieces of filmed entertainment[2] ("the work") which also made use of the name Loisaidas as a title.  (Id. ¶¶ 45-51.)  They have made the

---

[1] At this stage the Court considers only the legal sufficiency of the second amended complaint and accepts all well-pleaded allegations in the second amended complaint as true.

[2] A copy of this filmed entertainment and a copy of its soundtrack were submitted to the Court as Exhibits A and B to the Declaration of Tom J. Ferber, dated October 2, 2015.  (ECF No. 63.)  As the filmed entertainment is referred to in the second amended complaint and is integral to Medina's claims, it is deemed incorporated into the second amended complaint by reference and is properly before the Court in this motion to dismiss.  See Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004).

work available for purchase and rental on a dedicated website, the video-sharing site Vimeo, and other online outlets.  (Id. ¶¶ 56-57 & Exh. D; ECF No. 65 Exh. A; ECF No. 51 ¶ 2 n.1.)  A logo for the work features the word "LOISAIDAS," stylized as a skyline, above a handgun.  (SAC Exh. D.)  West and Dash have also published a soundtrack for the work online.  (ECF No. 63 Exh. B.)

Medina argues that the work is a series of music videos for a rap group West and Dash had named Loisaidas.[3]  (SAC ¶¶ 45-50.)  West and Dash argue that it is a film or motion picture.  (ECF No. 62 at 1-2.)

The work consists of eight episodes or clips of between four and twelve minutes.  Each of the episodes advances a narrative about a violent turf war for control of the Lower East Side's drug business.  Portions of the clips, most frequently an opening montage and closing credits, are set to rap music.  (E.g., Ep. 2, 0:10-1:13; Ep. 5, 8:30-8:58.)  Although most of the work features either voice-over prose narration or characters addressing one another without breaking the fourth wall to acknowledge the camera, there are three times in the eight clips in which a character raps to the camera in a style more familiar to music videos than films.  (ECF No. 51 ¶¶ 8-10.)  Rapper Murda Mook, who plays a character named Remy, performs two of these songs, (Ep. 1, 5:20-7:09; Ep. 7, 2:49-4:35) while rapper Smoke DZA, who plays a character named Rugby, performs the third.  (Ep. 2, 2:00-3:12.)

---

[3] The Court notes that Medina's original complaint and first amended complaint, respectively, referred to the work as a "film" and a "series of short films."  (ECF No. 1 ¶ 27; ECF No. 5 at 1.)

As discussed above, the work is titled "Loisaidas."  During the eight clips, the term is spoken or appears a handful of times; it is almost always obviously used as the name of a place, rather than as the name of a group of people.  For example, the first episode opens with text that informs the viewer "There is a place / Where there are no rules / Where the wrong move can cost a life / A place to get money / And risk dying for it everyday."  (Ep. 1, 0:10-0:42.)  This is followed by a wordless sequence in which a character is killed, at which point the word "LOISAIDAS" fills the screen. (Ep. 1, 1:26.)  In the third episode, the narrator refers to being "downtown in Loisaidas" and states that "Loisaidas was the place to be."  (Ep. 3, 2:30.)  The seventh episode ends with Murda Mook rapping that he's "from Loisaidas."  (Ep. 7, 3:52.)

Other usages of the term in the work are more ambiguous, such as the on-screen text in the second episode that identifies one character as "One of the young stars of Loisaidas," or the narrator's statement in the eighth episode that "if you wanna get in the Loisaidas, here's your chance."  (Ep. 2, 0:08-0:11; Ep. 8, 0:08-0:12.) Although these references, standing alone, could be interpreted to refer to a group of people known as the Loisaidas, in the context of the work as a whole they, like the other uses of the term, refer to a place.

Plaintiff initiated this suit on April 2, 2015.  (ECF No. 1.)  He has amended his complaint twice.  (ECF Nos. 5 & 57.)  The operative second amended complaint alleges that "[t]he word 'LOISAIDAS' is arbitrary" as to both plaintiff's and defendants' works; that "[t]he word 'LOISADAS' does not describe or suggest" either

4

plaintiff's or defendants' works; and that the trademark "is inherently distinctive" and "has substantial secondary meaning in the marketplace." (SAC ¶¶ 25-30.) It further alleges that "Defendants were aware of Plaintiff's LOISAIDAS goods and services before they decided to use the same word mark LOISAIDAS to identify their goods and services." (Id. ¶ 38.)

The second amended complaint includes the following allegations of confusion:

> Actual confusion between the parties' respective LOISAIDAS brand goods and services has occurred and is occurring.
>
> An appreciable number of the relevant public mistakenly believed and will continue to believe that the word mark "LOISAIDAS" originated with Defendants' goods and services unless the Court halts Defendants' use of LOISAIDAS.
>
> The relevant consumers are likely to confuse Defendants' LOISAIDAS music videos with Plaintiff's LOISAIDAS music, videos and marks.
>
> ….
>
> The Defendants' actions are likely to cause confusion among an appreciable number of ordinary prudent consumers as to the source, origin, sponsorship, approval or affiliation of the Defendants' services and/or products with Plaintiff's services and/or products.
>
> ….
>
> The Defendants' use of Plaintiff's word mark results in confusion as to sponsorship, association, source and origin of the Plaintiff's and Defendants' products.
>
> ….
>
> As a result of Defendants' conduct, the public has already believed and is likely to continue to believe that Plaintiff's goods and services are in some way associate with affiliated with and/or originating from the publishers and/or sponsors of the LOISAIDAS Clips sold and/or promoted by Defendants.

....

Upon information and belief, there is actual confusion among the
potential consumers of Plaintiff's brand as to the source of the
LOISAIDAS trademark.

Upon information and belief, there is actual confusion among the
potential consumers of Defendants' Clips as to the source of the
LOISAIDAS trademark.

....

Defendants' aforesaid acts are likely to cause confusion, or to cause
mistake, or to deceive as to affiliation, connection, or association with
Plaintiff, or origin, sponsorship, or affiliation of Plaintiff's LOISAIDAS
by Defendants.  They public is likely to be confused as to the source,
origin, sponsorship, approval or certification of Plaintiff's LOISAIDAS
trademark.

(<u>Id.</u> ¶¶ 58-60, 87, 94, 98, 101-02, 124.)

## II.   LEGAL PRINCIPLES

### A.   <u>The Motion to Dismiss Standard</u>

Under Rule 12(b)(6), a defendant may move to dismiss a complaint for

"failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).

To survive a Rule 12(b)(6) motion, a plaintiff must provide grounds upon which his

claim rests through "factual allegations sufficient 'to raise a right to relief above the

speculative level.'"  <u>ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.</u>, 493 F.3d 87, 98 (2d

Cir. 2007) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)).  In other

words, the complaint must allege "enough facts to state a claim to relief that is

plausible on its face."  <u>Starr v. Sony BMG Music Entm't</u>, 592 F.3d 314, 321 (2d Cir.

2010) (quoting <u>Twombly</u>, 550 U.S. at 570).  "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

In applying this standard, the Court accepts as true all well-pled factual allegations, but does not credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." Id. The Court will give "no effect to legal conclusions couched as factual allegations." Port Dock & Stone Corp. v. Oldcastle Ne., Inc., 507 F.3d 117, 121 (2d Cir. 2007) (citing Twombly, 550 U.S. at 555). Knowledge and other conditions of a person's mind may be alleged generally. Fed. R. Civ. P. 9(b). A plaintiff may plead facts alleged upon information and belief "where the facts are peculiarly within the possession and control of the defendant." Arista Records, LLC v. Doe 3, 604 F.3d 110, 120 (2d Cir. 2010). But, if the Court can infer no more than the mere possibility of misconduct from the factual averments—in other words, if the well-pled allegations of the complaint have not "nudged [plaintiff's] claims across the line from conceivable to plausible"—dismissal is appropriate. Twombly, 550 U.S. at 570; Starr, 592 F.3d at 321 (quoting Iqbal, 556 U.S. at 679). In deciding a 12(b)(6) motion, the Court may not consider evidence proffered by any party, but is instead limited to the allegations in the complaint and facts from documents either referenced therein or relied upon in framing the complaint. See DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010). Allegedly infringing works referred to in trademark claims may be integral to those claims and incorporated into the complaint by reference, and thus properly considered on a motion to dismiss. Blue Tree Hotels Inv. (Can.), Ltd. v.

7

Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004); Louis

Vuitton Malletier S.A. v. Warner Bros. Entertainment Inc., 868 F. Supp. 2d 172,

176 n.6 (S.D.N.Y. 2012).

 B. The Lanham Act

 To state a valid claim for trademark infringement, a plaintiff must show both

that it has a valid mark entitled to protection and that the defendant's use of that

mark is likely to confuse consumers as to the origin or sponsorship of the

defendant's work.  Savin Corp. v. Savin Grp., 391 F.3d 439, 456 (2d Cir. 2004).  The

validity of Medina's mark is not contested for the purposes of this motion.

 There are eight principal factors, known as the Polaroid factors, which courts

consider to determine whether there is any likelihood that an appreciable number of

ordinarily prudent purchasers are likely to be misled or confused as to the source of

the work in question.  Id.  These factors are "(1) the strength of the senior mark; (2)

the degree of similarity between the two marks; (3) the proximity of the products;

(4) the likelihood that the prior owner will 'bridge the gap'; (5) actual confusion; (6)

the defendant's good faith (or bad faith) in adopting its own mark; (7) the quality of

defendant's product; and (8) the sophistication of the buyers."  Id. (citing Polaroid

Corp. v. Polaroid Elecs. Corp., 287 F.2d 492, 495 (2d Cir. 1961)).

 C. The First Amendment in Trademark Actions

 "Because overextension of Lanham Act restrictions in the area of titles might

intrude on First Amendment values, [the Court] must construe the Act narrowly to

avoid such a conflict."  Rogers v. Grimaldi, 875 F.2d 994, 998 (2d Cir. 1989).  "[I]n

general the Act should be construed to apply to artistic works only where the public interest in avoiding consumer confusion outweighs the public interest in free expression." Id. at 999. Thus, the Second Circuit has held that the Lanham Act does not apply to titles of artistic works "unless the title [either] has no artistic relevance to the underlying work whatsoever" or "explicitly misleads as to the source or the content of the work." Id. The Second Circuit has further directed district courts to determine whether a title is explicitly misleading "by application of the venerable Polaroid factors," and noted that "the finding of likelihood of confusion must be particularly compelling to outweigh the First Amendment interest recognized in Rogers." Twin Peaks Prods., Inc. v. Publ'ns Int'l, Ltd., 996 F.2d 1366, 1379 (2d Cir. 1993).

      D.    <u>State Law Claims</u>

"The elements necessary to prevail on common law causes of action for trademark infringement 'mirror the Lanham Act claims. A claim of unfair competition under New York law also requires evidence of defendant's bad faith." Malletier v. Dooney & Bourke, Inc., 561 F. Supp. 2d 368, 381 (S.D.N.Y. 2008) (internal quotation marks and footnote omitted). "[T]he same First Amendment considerations that limit a cause of action under the Lanham Act apply also to a cause of action under New York law." Yankee Publ'g Inc. v. News Am. Publ'g Inc., 809 F. Supp. 267, 282 (S.D.N.Y. 1992).

III.   DISCUSSION

The First Amendment protects defendants' right to artistic expression by extinguishing the claims plaintiff has brought in this action.

As an initial matter, it is clear that the relevant term here is the title of defendants' artistic work.  Plaintiff's argument that defendants use "Loisaidas" to refer to a musical group is fatally undermined by the work itself, which as discussed never displays any musical group performing, never identifies the two characters who do rap on-screen as members of any musical group, and features music from a panoply of different artists rather than a single musical group.  Plaintiff was closer to the truth in his original complaint and first amended complaint, which respectively referred to defendants' work as a "film" and a "series of short films" (ECF No. 1 ¶ 27; ECF No. 5 at 1), than in the operative complaint which labels it a series of music videos.  (SAC ¶ 1.)  The work is centrally incorporated into the complaint and thus properly considered on this motion to dismiss, including where it flatly contradicts particular allegations.  Canal+ Image UK, Ltd. v. Lutvak, 773 F. Supp. 2d 419, 427 (S.D.N.Y. 2011).

Because the term at issue is the title of an artistic work, the standards articulated in Rogers and Twin Peaks control the determination of this motion.  The Court first asks whether the title has any artistic relevance to the work whatsoever and then, if it does, whether the application of the relevant factors indicates a particularly compelling likelihood of confusion that renders the title explicitly misleading.  See Rogers, 875 F.2d at 1000; Twin Peaks, 996 F.2d at 1379.  Contrary

10

to plaintiff's arguments, determination of these standards is not premature at this stage.  The Second Circuit "has never stated that a court cannot properly apply the Rogers test (or the likelihood of confusion factors) on a motion to dismiss.  In fact, the Second Circuit has suggested that it would be appropriate 'where the court is satisfied that the products or marks are so dissimilar that no question of fact is presented.'"  Louis Vuitton Malletier S.A. v. Warner Bros. Entm't Inc., 868 F. Supp. 2d 172, 183 (S.D.N.Y. 2012) (quoting Pirone v. MacMillan, Inc., 894 F.2d 579, 584 (2d Cir. 1990)).

The title "Loisaidas" clearly has artistic relevance to a series of short films about drug dealers seeking to acquire control of the drug trade in Manhattan's Lower East Side.  As noted in the attachments to plaintiff's complaint, "Loisaidas …. is the Spanish slang term for 'lower east siders.'"  (SAC Exh. B.)  The characters repeatedly refer to people and places "downtown in Loisaidas" (Ep. 3, 2:30), and scenes are identifiably set in the Lower East Side (see, e.g., Ep. 2, 0:59 (character bikes past Katz's Deli)).  The copyrighted term was "not arbitrarily chosen just to exploit the publicity value of [plaintiff's music duo] but instead ha[s] genuine relevance to the film's story."  Rogers, 875 F.2d at 1001.

Because the title is artistically relevant, "[t]he question then is whether the title is misleading in the sense that it induces members of the public to believe the" work was either created by or about plaintiff's music duo.  Twin Peaks, 996 F.2d at 1379.  This analysis seeks to accomplish "[t]he limited purpose of trademark protections set forth in the Lanham Trade-Mark Act," which is "to avoid confusion

in the marketplace" and "to protect trademark owners from a false perception that they are associated with or endorse a product." Mattel, Inc. v. Walking Mountain Prods., 353 F.3d 792, 806 (9th Cir. 2003) (internal quotation marks omitted).

The title "Loisaidas" is not explicitly misleading. It is not, and the public would not interpret it to be, a source-denoter. "A title is designed to catch the eye and to promote the value of the underlying work. Consumers expect a title to communicate a message about the book or movie, but they do not expect it to identify the publisher or producer." Mattel, Inc. v. MCA Records, Inc., 296 F.3d 894, 902 (9th Cir. 2002). This is particularly true where "defendants employed their own source designations elsewhere on the product." Rin Tin Tin, Inc. v. First Look Studios, Inc., 671 F. Supp. 2d 893, 901 (S.D. Tex. 2009). The complaint is devoid of concrete allegations that defendants attempted to suggest that plaintiff's duo produced the work; to the contrary, as evidenced by Exhibit D to the operative complaint, materials promoting the film prominently informed the reader that it was "Executive Produced: Dame Dash & Kanye West." (SAC Exh. D.)

Courts have repeatedly noted the troubling implications "when a trademark owner asserts a right to control how we express ourselves," including "when the mark (like Rolls Royce) has taken on an expressive meaning apart from its source-identifying function." Mattel, 296 F.3d at 900. They have thus prevented attempts by well-known brands and individuals, such as Barbie, Rin Tin Tin, and Ginger Rogers and Fred Astaire, to quash artistic works with titles that directly incorporate the protected mark.

If a "trademark owner does not have the right to control public discourse whenever the public imbues his mark with a meaning beyond its source-identifying function," the same limit applies with even more logical force where the mark had a public meaning <u>before</u> it ever played a source-identifying function.  <u>Id.</u>  The mark at issue in the instant action, "Loisaidas," is an established demonym for residents of a particular Manhattan neighborhood.  (SAC Exh. B.)  Plaintiff's music duo is from that neighborhood, "hence the name."  (<u>Id.</u>)  Plaintiff is entitled to protect his duo's trademark, but not by staking his claim to a pre-existing term and then attempting to remove all expressive, non-explicitly-misleading uses from public circulation.

Consideration of plaintiff's complaint and the expressive work that prompted it permits only one conclusion: that the work is a film, and that its title is artistically relevant to its content and not explicitly misleading as to any association with plaintiff's music duo.  Given the First Amendment values at interest, the Lanham Act and its state law counterparts have been and must be construed not to reach such expression.  <u>Rogers</u>, 875 F.2d at 998; <u>Yankee Publ'g Inc. v. News Am. Publ'g Inc.</u>, 809 F. Supp. 267, 282 (S.D.N.Y. 1992).  Plaintiff's complaint has failed to state a claim on which relief can be granted.

IV.     CONCLUSION

For the reasons stated above, defendants' motion to dismiss the Second

Amended Complaint is GRANTED.  The Clerk of Court is respectfully directed to

terminate the motion at Docket No. 61 and to terminate this action.


        SO ORDERED.

Dated:        New York, New York
              July 14, 2016


                                        _____
                                            KATHERINE B. FORREST
                                            United States District Judge

14